Filed 8/3/2020 1:52 PM
Reba Squyres, District Clerk
Angelina County, Texas
By: Kathy Claunch,
Deputy Clerk

CAUSE NO. CV-00412-17-06

| | | |
|---|---|---|
| DAPHNE NOBLE FREE | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 217TH JUDICIAL DISTRICT |
| | § | |
| ALLSTATE INDEMNITY COMPANY | § | ANGELINA COUNTY, TEXAS |

**PLAINTIFF'S SECOND AMENDED CLASS ACTION PETITION AND
REQUEST FOR INJUNCTIVE RELIEF**

Plaintiff, DAPHNE NOBLE FREE, individually and on behalf of all others similarly situated, files this her *Plaintiff's Second Amended Class Action Petition and Request for Injunctive Relief* against Defendant, ALLSTATE INDEMNITY COMPANY, and respectfully alleges as follows:

### I. DISCOVERY-CONTROL PLAN

1.      Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4.  This is a complex, proposed class action that will require entry of a specific discovery control order entered by the Court.

### II. PARTIES

2.      Plaintiff, Daphne Noble Free, f/n/a Daphne Noble, is an individual and Texas citizen residing in Angelina County at 240 Shelley, Pollok, Texas 75969.  Plaintiff has already appeared in this matter through undersigned counsel upon whom service may be perfected.  Plaintiff brings this matter on behalf of herself, individually and on behalf of all others similarly situated, in her representative capacity as proposed class representative.

3.      Defendant, Allstate Indemnity Company ("Allstate"),  has already answered and appeared in this action and may be served through its counsel of record, John M.

1

**EXHIBIT C**

Causey, at **HOPE & CAUSEY, P.C.**, P.O. Box 3188, Conroe, Texas 77305-3188 and Roger

Higgins, **THOMPSON, COE, COUSINS & IRONS, L.L. P.,** 700 N. Pearl St., 25th Floor –

Plaza of the Americas, Dallas, Texas 75201.

### III. JURISDICTION AND VENUE

4.      The Court has subject-matter jurisdiction over the lawsuit because the

amount in controversy exceeds this Court's minimum jurisdictional requirements.

5.      Plaintiff Daphne Noble Free's individual damages are less than $75,000.00

and, based on the nature of the class claims, Plaintiff believes that the total damages

suffered by each individual class member will likewise be less than $75,000.00 excluding

prejudgment interest and court costs.  Plaintiffs do not yet have sufficient information to

conclusively state the maximum amount of damages suffered by the class as a whole.

However, based on conversations with Defendant's counsel regarding the total number of

potential claimants and claims, Plaintiff believes that the aggregate amount of damages

claimed by all class members combined shall not exceed $5,000,000.00

6.      Venue in Angelina County is proper in this cause under Section 15.002(a)(1)

of the TEXAS CIVIL PRACTICES AND REMEDIES CODE because all or a substantial part of

the events or omissions giving rise to this lawsuit occurred in this county.  At all times

relevant to this case, Defendant had an agent or transacted business in the State of Texas

including Angelina County, Texas.  The Representative Plaintiff, individually and on

behalf of others, had property in Texas that a) was destroyed by fire, b) in Texas, and c)

was covered by contractually-agreed insurance marketed, advertised, bargained, and/or

EXHIBIT C

sold in the State of Texas by Allstate. Accordingly, this Court has subject matter jurisdiction over this case pursuant to TEX. GOV'T. CODE 24.007(b). This Court has personal jurisdiction over Defendant because at all relevant times, it conducted and continues to conduct business in Angelina County, Texas and throughout the State of Texas. The cause of action asserted arose from or is substantially connected with purposeful acts committed by Defendant in Texas because Defendant marketed, advertised, bargained, and/or sold its insurance policies relevant to these and similar facts within the State of Texas. Defendant's acts, omissions, negligence and other activities while conducting its business within the State of Texas is the basis of the Representative Plaintiff's cause of action.

7.    This Court has both general and specific jurisdiction over Defendant. Defendant's systematic and continuous activities within the State of Texas make it essentially at home here and/or subject to general jurisdiction. Additionally and/or in the alternative, the specific facts alleged by Plaintiff occurred in the State of Texas where Defendant purposefully availed itself of the benefits of Texas, and could have and can reasonably anticipate being brought before this Honorable Court and any other Texas state court. The assertion of jurisdiction by this Court over Defendant does not offend the traditional notions of fair play and substantial justice.

### IV. RULE 28. TEXAS RULES OF CIVIL PROCEDURE

8.    To the extent that the above-named defendant is conducting business pursuant to a trade name or assumed name, then suit is brought against it pursuant to the

EXHIBIT C

terms of Rule 28, TEXAS RULES OF CIVIL PROCEDURE, and Plaintiff hereby demands that upon answering this suit, that Defendant answer in its correct legal name and assumed name.

## V.  FACTS

9.    This lawsuit arises out of Defendant's refusal to pay full contractual benefits for Plaintiff's fire loss - and all those similarly situated, covered by an insurance policy issued by Allstate Indemnity Company ("Allstate").  Class Representative Free's specific incident occurred about 6:30 a.m., June 18, 2015, in Angelina County, Texas.  Plaintiff Daphne Noble Free was notified by a neighbor that her home was on fire.  After further investigation, it appears the fire was intentionally set by an unknown individual.  Plaintiff submitted a claim to Allstate, which acknowledged Plaintiff's claim on or about, August 19, 2015.  To date, Defendant has made only partial payment on Plaintiff's claims; moreover, because the home was a total loss, Plaintiff's mortgage company refused to accept or apply the partial payment tendered by Defendant to the mortgage.

## VI. SUIT FOR BREACH OF CONTRACT & FAILURE TO PAY PLAINTIFF'S LIQUIDATED CLAIM

10.    Defendant's actions as described herein constitute a breach of contract committed upon Plaintiff and others similarly situated in violation of Texas law causing damage to Plaintiff and others similarly situated for which she now sues in both her individual and representative capacity.

11.    October 5, 2015, Plaintiff requested Allstate provide a copy of her insurance policy including any endorsements or amendments.

4

EXHIBIT C

12.    December 10, 2015, Plaintiff requested Allstate to provide information regarding Defendant's acceptance of her claim and Defendant's finalization of the claim.

13.    December 31, 2015, Defendant made a partial payment of $29,385.03 which Defendant claimed was the "actual value" of Plaintiff Free's home. Those funds have been tendered to Plaintiff's mortgage holder which is holding the funds in escrow because the monies are insufficient to pay off the loan.

14.    Under the express terms of the policy, Plaintiff Free's manufactured home was covered for a value up to $50,320.00. The insurance contract is described as an "actual value" contract. However, TEXAS INSURANCE CODE §863.053 controls payment of total-loss fire claims in Texas stating:

(a) A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This subsection does not apply to personal property.

(b) An insurance company shall incorporate verbatim the provisions of Subsection (a) in each fire insurance policy issued as coverage on real property in this state.

TEX.INS.CODE §863.053

15.    The insurance contract sold to Plaintiff Free and to those similarly situated purports to comply with TEX.INS.CODE §863.053 and contains the required provision, word for word. However, Defendant Allstate has steadfastly refused to pay Plaintiff Free's liquidated total loss claim, and, upon information and belief, many other similarly situated claims throughout the State of Texas.

5

**EXHIBIT C**

16.   Plaintiff Free repeatedly requested that Defendant explain its legal basis for refusing to pay Plaintiff Free's liquidated claim under the express terms of the policy and as required by state law.  In response, Defendant Allstate has only stated that since Plaintiff Free's home is a manufactured home, Allstate will not pay the stated value.  Plaintiff Free through Counsel has requested but has not received any legal authority for Allstate's position and basis for ignoring the express terms of the contract and the TEXAS INSURANCE CODE, and the contract itself does not have any such exclusion for manufactured homes. In fact, Plaintiff Free's insurance policy at issue 1) specifically states that it is a "Manufactured Home Policy" and 2) specifically contains the statutory required language liquidating the insurance claim for the full value of the policy limits in the event of a total loss fire claim. *See* **Exhibit 1**.

### VII. BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING

17.   Under Texas law, Defendant Allstate Indemnity Company ("Allstate") owes its insureds including Plaintiff Free and those similarly situated a duty of good faith and fair dealing. *Universal Life Insurance. Co. v. Giles*, 950 S.W.48 (Tex. 1997).  Due to the special relationship that exists between an insurance company and its insured, an insurance company is liable for breaching its duty of good faith and fair dealing owed to its insureds when an insurance company fails to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim when the insurers liability is reasonably clear as it is in this case.

6

**EXHIBIT C**

18.    Defendant Allstate further breached its duties of good faith and fair dealing by failing and refusing to comply with Texas laws concerning Plaintiff's claims as well as the claims of those similarly situated.  Specifically, the Texas Legislature enacted Chapter 542 of the TEXAS INSURANCE CODE also known as the "Unfair Claim Settlement Practices Act" to prohibit insurance companies and their representatives from engaging in Unfair Claim Settlement Practices.  The Act mandates:  "No insurer doing business in this state under the authority, rules and regulations of this code shall engage in unfair claim settlement practices."

19.    In violation of the Unfair Claim Settlement Practices Act, Defendant Allstate and its agents, employees and representatives, conducted prohibited acts and practices including, but not limited to, the following:

1.    Knowingly misrepresenting to claimants including Plaintiff Free and those similarly situated pertinent facts or policy provisions relating to coverages at issue;

2.    Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policy;

3.    Failing to adopt and implement reasonable standards for prompt investigation of claims arising under its policy;

4.    Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear;

5.    Compelling policyholders to institute suit to recover amounts due under its policy by offering substantially less than the amounts ultimately recovered in suits brought by them; or,

6.    Failure of any insurer to maintain information required by §542.005.  Thus, due to Defendant Allstate Indemnity Company's breach of the duty of good

7

**EXHIBIT C**

faith and fair dealing and Defendant's failure and refusal to pay Plaintiff's claim(s), Plaintiff Free and those similarly situated have incurred actual damages, including:

1. All benefits owed under the policy;
2. Additional interest and penalties due to the delay in payment of this claim; and
3. Attorney's fees.

## VIII. STATUTORY VIOLATIONS OF CHAPTER 541 OF THE TEXAS INSURANCE CODE

20.    The Texas Legislature enacted Chapter 541 of the TEXAS INSURANCE CODE to regulate trade practices in the business of insurance by: (1) defining or providing for the determination of trade practices in this state that are unfair methods of competition or unfair or deceptive acts or practices; and (2) prohibiting those trade practices.  Further, the legislature made it clear that this Act "shall be liberally construed and applied to promote its underlying purposes as set forth in this section." *See* §541.008 of the TEXAS INSURANCE CODE.

21.    In violation of Chapter 541 of the TEXAS INSURANCE CODE, Defendant knowingly[2] and intentionally engaged in unfair methods of competition and unfair and deceptive acts or practices in the business of insurance by engaging in Unfair Settlement Practices with respect to a claim by an insured or beneficiary including, but not limited to:

1. Misrepresenting to claimants a material fact or policy provision relating to coverage at issue;

---

[1]    Under Article '541.002 of the TEXAS INSURANCE CODE, "**Knowingly**" means actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which a claim under Subchapter D is based.  "Actual awareness" may be inferred if objective manifestations indicate that a person acted with actual awareness.

**EXHIBIT C**

2.    Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:

    A)    a claim with respect to which the insurer's liability has become reasonably clear;

    B)    a claim under one portion of a policy with respect to which the insurer's liability has become reasonably clear to influence the claimant to settle another claim under another portion of the coverage unless payment under one portion of the coverage constitutes evidence of liability under another portion;

3.    Failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim; and

4.    Failing within a reasonable time to affirm or deny coverage of a claim;

## IX. MISREPRESENTATION OF INSURANCE POLICY

22.    Further, pursuant to §541.061 of the TEXAS INSURANCE CODE, Defendant has engaged in unfair methods of competition or unfair or deceptive acts or practices in the business of insurance to misrepresent an insurance policy by:

1.    making an untrue statement of material fact;

2.    failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

3.    making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; or

4.    making a material misstatement of law.

## X. VIOLATIONS OF THE TEXAS ADMINISTRATION CODE

23.    Section 28.201 *et seq.* of the TEXAS ADMINISTRATIVE CODE provides that "No insurer shall engage in unfair claim settlement practices."  Plaintiff on behalf of herself

EXHIBIT C

and those similarly situated alleges that Defendant engaged in unfair claim settlement practices violating the following subsections of the TEXAS ADMINISTRATION CODE:

(1)    misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;

(2)    failing to adopt and implement reasonable standards for prompt investigation of claims arising under their policies;

(3)    not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear;

(4)    compelling policy holders to institute suits to recover amounts due under their policies by offering substantially less than the amounts ultimately recovered in suits brought by them;

…..

(6)    failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

(7)    undertaking to enforce a full and final release from a policyholder when, in fact, only a partial payment has been made; and,

(8)    refusing to pay claims without conducting a reasonable investigation based upon available information.

24.    Plaintiff would show that Defendant Allstate's employees were at all applicable times a "person" as that term is defined in section 541.002 of the TEXAS INSURANCE CODE and that all or part of Defendant's violations described herein were committed by and through its employees and other currently unknown employees and agents.

10

**EXHIBIT C**

## XI. STATUTORY VIOLATIONS
## OF TEXAS INSURANCE CODE 542.051 - 542.061

25.    In the processing of Plaintiff's claims and the claims of those similarly situated, Defendant Allstate knowingly and intentionally violated TEXAS INSURANCE CODE §542.055 - §542.058.  Because Defendant is 1) liable to Plaintiff and to those similarly situated for a claim under the insurance policy and 2) not in compliance with this subchapter, the insurer [Defendant] is "liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney fees."  If a suit is filed, the attorney's fees shall be taxed as part of the costs in the case.  Plaintiff further asserts that Defendant is liable for a separate 18% penalty for each separate violation of this subchapter for herself in her individual capacity and for all those similarly situated.

### XII. REMEDIES ARE NOT EXCLUSIVE—OTHER CAUSES OF ACTION

26.    Further, pursuant to §542.061 of the TEXAS INSURANCE CODE, the remedies provided by this subchapter are in addition to any other remedy or procedure provided by law or at common law.  Therefore, Plaintiff on behalf of herself and of others similarly situated seeks, *inter alia*, to recover from Allstate all available damages through other causes of action asserted herein including restitution, disgorgement, *quantum meruit*, and other causes of action to be specified after an adequate time of discovery and/or at the time of trial.

EXHIBIT C

## XIII. DECEPTIVE TRADE PRACTICE CLAIMS

27.    Plaintiff Free and others similarly situated purchased a policy of insurance and paid valuable consideration in the form of premiums to Defendant Allstate for protection and for coverage in the event of a loss.  As a consumer, Plaintiff and others similarly situated are entitled to the protections afforded by the Texas Legislature. Specifically, the legislature enacted the Texas Deceptive Trade Practice - Consumer Protection Act (DTPA) which requires that the Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection."

28.    Pursuant to the D.T.P.A., it is unlawful to engage in false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.  Defendant Allstate and its agents, employees, and representatives have knowingly and intentionally engaged in false, misleading, or deceptive acts or practices including, but not limited to, the following:

1.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which he does not;

2.    Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

3.    Advertising goods or services with intent not to sell them as advertised;

12

EXHIBIT C

4.   Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve or which are prohibited by law; and,

5.   Other Texas laws and/or statutes to be stated after an adequate time for discovery or at the time of trial.

29.   Pursuant to §17.50 of the D.T.P.A., Daphne Noble Free and those similarly situated to her/their detriment relied upon the statements, representations and warranties of Defendant Allstate, its agents, employees or representatives in deciding to purchase insurance with Defendant as well as initially trusting Defendant to properly and timely handle their claims.  Moreover, the actions and the course of action of Defendant, its agents, employees and representatives have been unconscionable, including but not limited to the use or employment of acts or practices in violation of Chapter 541 and 542 of the TEXAS INSURANCE CODE which have been and continue to be a producing cause of economic damages and mental anguish suffered by Plaintiff and those similarly situated. As such, Plaintiff and those similarly situated are entitled to maintain an action against Defendant as well as its agents, employees and representatives for such prohibited acts or practices.  Plaintiff, individually and on behalf of those similarly situated, seek recovery of all damages allowed by law for Defendant's violations of the D.T.P.A. including all actual damages owed under the policy, mental anguish, treble damages, attorney's fees, pre and post judgment interests and costs of court.

## XIV. CLASS ACTION ALLEGATIONS

30.   Pursuant to TEX. R. CIV. P. 42, Plaintiff Free on behalf of herself and those similarly situated brings this action as a class action on behalf of herself and the class of

EXHIBIT C

similarly situated persons. The proposed "Class" or "Class Members" is defined as follows:

> All Allstate insureds (i) whose real property suffered a total loss by fire in the State of Texas within the past six years of the filing of suit through present (ii) whose claim was accepted, (iii) whose claim was paid within the previous four (4) years of filing of this suit, and (iv) whose claim was paid less than the full "face value" amount of the insurance policy.

The class members are presently ascertainable by objective criteria. To the extent this definition is found to be insufficient to identify every potential class member, Plaintiff notes per the Texas Supreme Court that "…a class definition will not fail merely because every potential class member cannot be identified at the suit's commencement." *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398 (Tex.2000) (citing *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir.1970)).

31.    Certification is appropriate under TEX.R.CIV.P. 42(a)(1) because "…the class is so numerous that joinder of all members is impracticable..." On information and belief, the proposed Class consists of hundreds – perhaps over a thousand, Allstate-insured property owners, the joinder of which in one action is impracticable. The precise number and identities of the Class Members are currently unknown to Plaintiff, but can be easily derived through discovery. Plaintiff would note that Allstate keeps records not only about all its insureds, but those - like Plaintiff, who made total fire-loss claims for real property, the amounts paid by Allstate for those claims, and the full policy limits of those policies.

EXHIBIT C

32.    Certification is appropriate under TEX. R. CIV. P. 42(a)(2) because "…there are questions of law or fact common to the class."  Defendant violated the rights and interests of each Class Member in the same manner including, *inter alia,* Defendant's refusal to pay full policy limits for the total loss by fire of manufactured homes like Plaintiff's manufactured home as well as Defendant's consistent misrepresentation of its insured's rights under the insurance policy contracts, (*i.e.*, Defendant's representation to its insureds that Defendant was permitted under the contract and law to pay what Defendant determined to be "cash value" for total loss fire claims rather than pay the full face value of the contract as required by the policy and state law.  In addition to these and other bases to be specified at a later date after adequate time for discovery and/or at the time of certification, common questions of law and fact predominate over any questions affecting individual Class Members including:

• whether an insurance company doing business in Texas must comply with TEX.INS.CODE Section 862.053(a) that holds, *inter alia*, "[a] fire insurance policy in the State of Texas, in case of a total loss by fire or property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy;"

• whether an insurance company doing business in Texas must comply with TEX.INS.CODE Section 862.053(b) that holds, *inter alia*, "[a]n insurance company shall incorporate verbatim the provisions of Subsection (a) in each fire insurance policy issued as coverage on real property in this state;"

• whether an endorsement for "actual cash value" as opposed to the full amount of the policy, supersedes Texas law including, *inter alia*, TEX.INS.CODE Section 862.053 in the case of a total fire loss of real property in Texas;

15

EXHIBIT C

• whether the face amount of a fire insurance policy in the State of Texas exceeds the actual value of the building or property is immaterial for total-loss fire claims in the State of Texas;

• whether an insurance company doing business in the state of Texas must comply with TEX.INS.CODE Section 862.053;

• whether an endorsement or policy that permits insurers doing business in Texas to pay "actual cash value" for total fire loss property cases conflicts with TEX.INS.CODE Section 862.053;

• whether, for an insurance company doing business in Texas with a policy provision that reads "[w]hen the policy provisions conflict with the statutes of the state in which the residence premises is located, the provisions are amended to conform to such statutes," the insurance policy is indeed amended to conform to such Texas statutes including, *inter alia*, TEX.INS.CODE Section 862.053;

• whether, for an insurance company doing business in Texas, "if a total loss [is] found by probative evidence to exist, the face amount of the policy becomes a liquidated amount and no further proof of damage need be made." *Bennett v. Imperial Is. Co.*, 606 S.W.2d 7, 0 (Tex.Civ.App.—Dallas 1980);

• whether manufactured homes permanently affixed to the land in Texas and taxed as an improvement to real property are, in fact, real property for purposes of total loss fire claims;

• whether Defendant's wrongful actions described herein directly or proximately caused Plaintiffs and Class Members to suffer damages;

• whether Plaintiff and Class Members are entitled to recover actual damages, consequential damages, punitive damages, treble damages, pre-and post-judgment interest, attorneys' fees, litigation expenses, and court costs, and if so, the amount of the recovery.

33.     Certification is appropriate under TEX. R. CIV. P. 42(a)(3) because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." For the reasons stated herein, the claims or defenses described herein are typical of the claims or defenses of the class.

16

EXHIBIT C

34.    Certification is appropriate under TEX. R. CIV. P. 42(a)(4).  Plaintiff and her counsel will fairly and adequately represent the interests of Class Members.  Plaintiff has no interests antagonistic to, or in conflict with, those of any of the Class Members. Plaintiff's counsel is experienced in leading and prosecuting mass torts, class actions, and complex litigation. A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and Class Members' claims.

35.    Certification is appropriate under TEX. R. CIV. P. 42(b)(1).  Indeed, as the Texas Supreme Court noted, "[t]he existence of minor conflicts standing alone, however, will not prevent a class representative from adequately representing a class." *Riemer v. The State of Texas, et al.*, 392 S.W.3d 635 (Tex.2013) (citing *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

36.    Plaintiff and Class Members have been harmed as a direct and proximate result of Defendant's wrongful actions described below. The common questions of law or fact described herein predominate any questions affecting individual Class Members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Litigating this case as a class action is appropriate because (i) it will avoid a multiplicity of suits and the corresponding burden on the courts and Parties, (ii) it will be virtually impossible for all Class Members to intervene as parties-plaintiffs in this action, (iii) it will allow numerous persons with claims too small to adjudicate on an individual basis because of prohibitive litigation costs to obtain redress for their injuries, and (iv) it will provide court oversight of the claims process once Defendant's liability is adjudicated.

EXHIBIT C

37.     Certification is appropriate under TEX. R. CIV. P. 42(b).   First, the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impede their ability to protect their interests. TEX. R. CIV. P. 42(b)(1).  Moreover, Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.  TEX. R. CIV. P. 42(b)(2).  Finally, the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these issues include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

EXHIBIT C

38.     As set forth herein, Plaintiff has met the prerequisites of TEX.R.CIV.P. 42 and believe that a class action is maintainable in accordance therewith.  Absent a class action, Defendant will retain the benefits of their wrongdoing to, upon information and belief, thousands of its insureds despite violating the law and inflicting substantial damages on Plaintiff and Class Members.

## XIV. ATTORNEY FEES

39.     As a result of Allstate's action(s) complained of in this Petition, Plaintiff on behalf of herself and those similarly situated were required to engage the services of the law firm of **MIKE LOVE & ASSOCIATES, L.L.C.** and **FERGUSON LAW FIRM, LLP** in order to bring this Declaratory Judgment Action and proposed class action.  Plaintiff, therefore, seeks reimbursement of reasonable attorney fees pursuant to CH 37 CPRC, Ch. 33 CPRC, Ch. 542 INSURANCE CODE, the DTPA, TEX. R. CIV. P. 42, and all other relevant Texas laws and statutes.

## XV. REQUEST FOR JURY TRIAL

40.     Plaintiff respectfully asserts her right to trial by jury on behalf of herself and those similarly situated.

## XVI. PRAYER

41.     For these reasons, Plaintiff, Daphne Noble Free on behalf of herself and those similarly situated asks that the Court require Defendant, Allstate Indemnity Company, to appear and answer, that this proposed class action be certified as stated herein, and that Plaintiff be awarded a judgment against Defendant for the following:

19

EXHIBIT C

      a.     Actual damages.

      b.     Prejudgment and postjudgment interest;

      c.     Statutory, compensatory, nominal, general, special, treble, exemplary, penalty, penalty / excess interest, and punitive damages against Allstate;

      d.     Attorney's fees;

      c.     Court costs; and,

      d.     All other relief, at law or in equity, to which Plaintiff is entitled.

42.    Additionally, the class is properly defined, and the requirements of Tex.R.Civ.P. 42 have been satisfied. Accordingly, Plaintiff Free on behalf of herself and the proposed Class Members respectfully seeks the following:

      a.     An order certifying this case as a class action and appointing Plaintiff Free and her counsel to represent each class as described hereinabove including an order providing class notice to each potential class member at the expense of Defendant Allstate;

      b.     An order awarding all relief deemed appropriate and proper by the Court pursuant to the requests for relief described herein;

      c.     An injunction and order requiring Allstate to comply with Texas law including, *inter alia*, the requirement that "[a] fire insurance policy in the State of Texas, in case of a total loss by fire or property insured,

EXHIBIT C

shall be held and considered to be a liquidated demand against the company for the full amount of such policy;"

d.    For an injunction and order requiring Allstate to immediately cease and desist selling its fire insurance for real property in the State of Texas; enjoining Allstate from continuing to market, advertise, distribute, issue, deliver, and sell these policies in an unlawful and/or misleading manner as described hereinabove; and ordering Allstate to take immediate corrective action - alternatively, for these injunctions to be entered until Allstate is ordered or begins to comply with the provisions cited in the preceding paragraph, para. (c);

e.    An order appointing the undersigned class counsel and awarding Plaintiff and the class attorney fees and costs from Allstate;

f.    For an order awarding Plaintiff and Class Members statutory, compensatory, nominal, general, special, treble, exemplary, penalty, penalty or excess interest, and punitive damages against Allstate;

g.    For an order awarding Plaintiff and Class Members pre- and post-judgment interest; and

h.    For an order providing such further relief including, if applicable, injunctive relief, restitution, disgorgement of premiums collected, and such other relief as this Court deems proper.

EXHIBIT C

Respectfully Submitted,

**FERGUSON LAW FIRM, LLP.**
350 Pine Street, Suite 1440
Beaumont, Texas 77701
(409) 832-9700 – T
(409) 832-9708 – F

By:/s/ Jane S. Leger
Jane S. Leger
State Bar No. 00788814
jleger@thefergusonlawfirm.com

By:/s/ Mark C. Sparks
Mark C. Sparks
State Bar No. 2400273
Mark@thefergusonlawfirm.coM

AND

**MIKE LOVE & ASSOCIATES, L.L.C.**
202 E. Lufkin Ave.
Lufkin, Texas  75901
Tel. 936.632.2000
Fax. 936.632.2005

By:    /s/ Mike Love
Mike Love
State Bar No. 24004778
mikelove@texaslawoffice.com
*ATTORNEYS FOR PLAINTIFF*
*DAPHNE NOBLE FREE AND*
*PUTATIVE CLASS COUNSEL FOR*
*CLASS MEMBERS*

22

EXHIBIT C

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd of August, 2020, a true and correct copy of *Plaintiff's*

*Second Amended Class Action Petition and Request for Injunctive Relief was* served on the

following parties or attorneys pursuant to Rules 20 and 21a of the TEXAS RULES OF CIVIL

PROCEDURE:

John M. Causey
**HOPE & CAUSEY, P.C.**
P.O. Box 3188
Conroe, TX 77305-3188

Roger Higgins
**THOMPSON, COE, COUSINS & IRONS, L.L. P.**
700 N. Pearl St., 25th Floor – Plaza of the Americas
Dallas, Texas 75201.

___/s/ Mike Love_____
Mike Love

EXHIBIT C

*Exhibit 1*

EXHIBIT C



Claim# 0373123686

To Whom It May Concern:

I, Patricia Torres          , employee of Allstate Insurance Company Irving, Texas,

do certify that the enclosed is a copy of policy and or declaration page for the above

claim number, showing the coverages that were on the policy at the time of loss

of 06/18/2015          . The enclosed copy of policy and or declaration

page was printed and mailed through Allstate's Output Processing Center.

Claim Support

State of Texas, County of Dallas

On this      26th      day of          June          2015, before me personally

appeared Patricia Torres      to me known to be the person who executed the

foregoing instrument and acknowledged that he/she executed the same as a free act

and deed.

MARY PERL
Notary Public, State of Texas
My Commission Expires
October 17, 2015

Notary Public

G52-3

**EXHIBIT C**



You're in good hands.

*Joe Hancock*
*609 S John Redditt*
*Lufkin TX 75904*

Information as of January 9, 2015

Policyholder(s)                           Page **1** of 3
**Daphne Noble**

Policy number
916 696 485

Your Allstate agency is
**Joe Hancock**
(936) 634-4451
JosephHancock@allstate.com

DAPHNE NOBLE
366 QUINCY RD
POLLOK TX 75969-4118

## Thank You for Being a Loyal Allstate Customer—We're Happy to Have You with Us!

Here's your Manufactured Home insurance renewal offer for the next 12 months. We've also included a guide to what's in this package and answers to some common questions.

### Renewing your policy is easy

Keep an eye out for your bill, which should arrive in a couple of weeks. Just send your payment by the due date on your bill.

If you're enrolled in the Allstate Easy Pay Plan, you won't receive a bill—we'll send you a statement with your payment withdrawal schedule.

You also won't receive a bill if a mortgage company or lienholder pays your insurance premium for you.

### We made some changes to your policy

As you review these materials, you may notice that we made some changes to your policy:

- For this renewal, we re-estimated your property's Actual Cash Value, which is based on factors such as repair and labor costs, and any depreciation related to your insured property. If the Actual Cash Value of your home changed, the amounts of your Dwelling, Other Structures and Personal Property (Contents) Coverages may have changed as well. You can review any changes to your coverage amounts in the

*(continued)*



EXHIBIT C

Policy number:           **916 696 485**                                   Page **2** of 3
Policy effective date:   February 24, 2015
Your Allstate agency is  Joe Hancock
                         (936) 634-4451

enclosed Policy Declarations. Also, you have the option to increase the amount of coverage for your Other Structures and Personal Property (Contents) if needed.

- We changed the name of your policy from "Actual Cash Value" to "Silver Feature."
- We changed the way we determine premiums in your state to better match the coverage we provide with your premium.
- And we're introducing new discounts.

These changes *may* cause a change in your premium, which is shown in the enclosed Policy Declarations. Of course, any recent changes you've made to your policy could have also affected your premium amount.

### Other policy options are now available
In the unfortunate event of a total loss, your Silver Feature policy provides a claim settlement based on Actual Cash Value, which considers the depreciated value of your home. We now offer a Gold Feature policy with Agreed Value Limit, which you can select from a range of coverage limits. Please contact us if you would like more information about the Gold Feature policy and Agreed Value option.

### How to contact us
Give your Allstate representative a call at (936) 634-4451 if you have any questions. It's our job to make sure you're in good hands.

Sincerely,

Steven P. Sorenson
President, Allstate Indemnity Company

RP27-1

**EXHIBIT C**

Policy number: **916 696 485**
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451



Page **3** of 3

## Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the *guide to your welcome package* below for the documents that are included. ***Next steps:*** review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. ***Next steps:*** please pay the minimum amount by the due date listed on it. You can also pay your bill online at allstate.com or by calling 1-800-ALLSTATE (1-800-255-7828). If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule.

☐ **What if I have questions?**
You can either contact your Allstate Agent or call us 24/7 at 1-800-ALLSTATE (1-800-255-7828) with questions about your coverage, or to update your coverages, limits or deductibles. Or visit us online at allstate.com.

## A guide to your renewal package







**Policy Declarations**
The Policy Declarations lists policy details, such as your property details and coverages.

**Policy Endorsements**
If changes are made to your policy, these documents will include your new contract language.

**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.



EXHIBIT C

060 032 042
150110S002234
1100000S002234060TX000150111004592500252000201602371B

EXHIBIT C

# Renewal Manufactured Home Policy Declarations

 
Platinum  Gold  Silver


Allstate.
You're in good hands.

Your policy effective date is February 24, 2015

Page **1** of 3

## Total Premium for the Premium Period (Your bill will be mailed separately)

| | |
|---|---|
| Premium for property insured | $1,281.63 |
| **Total** | **$1,281.63** |

*If you do not pay in full, you will be charged an installment fee(s). Refer to your bill for installment fee information.*

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | 2% | Multiple Policy | 15% |

## Location of property insured

366 Quincy Dr, Pollok, TX 75969-4118

## Insured manufactured home

| Manufacturer | Serial No. | Year |
|---|---|---|
| WALDEN | 2319663AB | 1994 |

## Rating Information

Please review and verify the information regarding your insured property. Please refer to the Estimated Home Replacement Cost Important Notice (X67678-1) for additional coverage information. Contact us if you have any changes.

The dwelling is tied down.

Out of park

**Dwelling Style:**
Built in 1994; 1 family; 1568 sq. ft.; multi-wide - 1 Story; condition - Satisfactory

**Foundation:**
100% Pier foundation

**Interior details:**
One basic kitchen                    Two basic full baths

**Exterior wall type:**
100% hardboard siding

**Heating and cooling:**
Average cost central air conditioning, 100%

*(continued)*

Information as of January 9, 2015

## Summary

Named Insured(s)
**Daphne Noble**

Mailing address
**366 Quincy Dr**
**Pollok TX 75969-4118**

Policy number
**916 696 485**

Your policy provided by
**Allstate Indemnity Company**

Policy period
Begins on **February 24, 2015** through **February 24, 2016** at 12:01 a.m. standard time, with no fixed date of expiration

Premium period
Beginning **February 24, 2015** through **February 24, 2016** at 12:01 a.m. standard time

Your Allstate agency is
**Joe Hancock**
609 S John Redditt
Lufkin TX 75904
(936) 634-4451
JosephHancock@allstate.com

**Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

TX032RBD 02/14



EXHIBIT C

Renewal Manufactured Home Policy Declarations
Policy number:          916 696 485
Policy effective date:  February 24, 2015
Your Allstate agency is  Joe Hancock
                        (936) 634-4451

Page **2** of 3

---

**Rating Information (continued)**

**Additional details:**

| | |
|---|---|
| Horizontal vinyl skirting, 100% | Vinyl flooring, 10% |
| Wall to wall carpet flooring | |
| (acrylic/nylon), 90% | |

**Fire protection details:**

| | |
|---|---|
| 4 miles to fire department | 499 ft. to fire hydrant |

**Roof surface material type:**
Composition
• 100% asphalt / fiberglass shingle

## Mortgagee / Lienholder

JPMORGAN CHASE BANK NA ITS SCRS &/OR ASSIGNS ATIMA
P O Box 47020, Doraville, GA 30362-0020
Loan number: 1505128761

## Additional Interested Party

None

## Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | Actual cash value up to $50,320 | • $500 All peril |
| Other Structures Protection | Actual cash value up to $5,032 | • $500 All peril |
| Personal Property Protection | Actual cash value up to $34,872 | • $500 All peril |
| Civil Authority Protection | $100 per day | |
| Foundation Water Damage | $5,000 | |
| Additional Living Expense | Up to 6 months not to exceed $10,064 | |
| Family Liability Protection | $50,000 each occurrence | |
| Guest Medical Protection | $1,000 each person | |
| | $25,000 each occurrence | |

TX032RBD 02/14

060 032 042
1501105002234
1100000500223406GTX000I50110045925002649003016023718

EXHIBIT C

Renewal Manufactured Home Policy Declarations
Policy number:     916 696 485
Policy effective date:    February 24, 2015
Your Allstate agency is    Joe Hancock
(936) 634-4451


Allstate.
You're in good hands.

Page **3** of 3

## Your policy documents

Your Manufactured Home policy consists of the Policy Declarations and the following documents. Please keep them together.

- Manufactured Home Policy – AS231
- Amendatory Endorsement – AP4830
- Texas Amendatory Endorsement – AS321-1
- Texas Manufactured Home Policy Actual Cash Value Loss Settlement Endorsement – AS467

## Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

▶ Do not pay.  Mortgagee has been billed.

**Allstate Indemnity Company**'s Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

*Steven P. Sorenson*
Steven P. Sorenson
President

*Susan L Lees*
Susan L. Lees
Secretary





EXHIBIT C

060 032 042
1501105002234
110000050022340060TX00015011004592500264900401602371B

EXHIBIT C

## Policy Endorsement

Policy number:  916 696 485
Policy effective date:  February 24, 2015
Your Allstate agency is  Joe Hancock
(936) 634-4451



Page **1** of 2

*The following endorsement changes your policy.
Please read this document carefully and keep it with
your policy.*

## Texas Manufactured Home Policy—
## Actual Cash Value Loss Settlement
## Endorsement – AS467

I.  In **Section I—Your Property**, under the **Additional
Protection** section, the **Debris Removal** provision is
replaced by the following:

3.  **Debris Removal**
**We** will pay reasonable expenses **you** incur to remove
debris of covered property damaged by a loss **we**
cover. If the loss to the covered property and the cost
of debris removal are more than the actual cash value
of the covered property, **we** will pay up to an
additional $2,500 for the debris removal.

II.  The following changes are made under **Section I
Conditions**:

A.  The **How We Pay For A Loss** provision is replaced by
the following:

5.  **How We Pay For A Loss**
a)  Loss to property insured by this policy under
**Dwelling Protection–Coverage A** and **Other
Structures Protection–Coverage B** will be
settled on an actual cash value basis. This
means there may be a deduction for
depreciation. Payment will not exceed the
smallest of:
1)  the actual cash value of the damaged,
destroyed or stolen property at the time
of loss;
2)  the amount necessary to repair or
replace the damaged, destroyed or stolen
property with other of like kind and
quality; or
3)  the limit of liability applicable to the
damaged, destroyed or stolen property
regardless of the number of **building
structures** or other structures involved in
the loss.

Payment will not include any increased cost
due to the enforcement of building codes,

ordinances or laws regulating the
construction, reconstruction, maintenance,
repair, relocation or demolition of **building
structures** or other structures.

b)  Loss to property insured by this policy under
**Personal Property Protection–Coverage C**
will be settled as follows:
1)  If **you** do not repair or replace the
damaged, destroyed or stolen property,
payment will be on an actual cash value
basis. This means there may be a
deduction for depreciation. Payment will
not exceed the limit of liability shown on
the Policy Declarations for the coverage
that applies to the damaged, destroyed
or stolen property, regardless of the
number of items involved in the loss.

**You** may make claim for additional
payment as described in paragraph 2)
below if applicable, if **you** repair or
replace the damaged, destroyed or stolen
covered property within 365 days of the
actual cash value payment unless you
request in writing that this time limit be
extended for an additional 180 days.

2)  Personal Property Reimbursement. When
the Policy Declarations shows that the
Personal Property Protection—
Reimbursement Provision applies under
**Personal Property Protection–Coverage
C, we** will make additional payment to
reimburse **you** for cost in excess of actual
cash value if **you** repair, rebuild or
replace damaged, destroyed or stolen
covered personal property or wall-to-wall
carpeting within 365 days of the actual
cash value payment unless you request in
writing that this time limit be extended
for an additional 180 days.

Personal Property Reimbursement
payment will not exceed the smallest of
the following amounts:
i)  the amount actually and necessarily
spent to repair or replace the
property with similar property of like
kind and quality;
ii)  the cost of repair or restoration; or



EXHIBIT C

Policy endorsement
Policy number:         **916 696 485**
Policy effective date:  February 24, 2015
Your Allstate agency is  Joe Hancock
(936) 634-4451

Page **2** of 2

iii)  the limit of liability shown on the
Policy Declarations for **Personal
Property Protection–Coverage C**, or
any special limit of liability described
in the policy, regardless of the
number of items of personal property
involved in the loss.

Personal Property Reimbursement will be
limited to the difference between any
actual cash value payment made for the
covered loss to personal property and the
smallest of 2)i), ii) or iii) above.

Personal Property Reimbursement will
not apply to:
i)   property insured under **Dwelling
Protection–Coverage A** and **Other
Structures Protection–Coverage B**,
except wall-to-wall carpeting;
ii)  antiques, fine arts, paintings,
statuary and similar articles which,
by their inherent nature, cannot be
replaced;
iii) articles whose age or history
contribute substantially to their
value. This includes, but is not
limited to memorabilia, souvenirs
and collector's items; or
iv)  property that was obsolete or
unusable for the originally intended
purpose because of age or condition
prior to the loss.

B.   The provision titled **Property Insurance Adjustment** is
deleted.

All other policy terms and conditions will apply. However, no
other **How We Pay For A Loss** provisions in any other policy
forms apply.

060 032 042
150110500Z234
210000050022340607X000150110045925002520005016023718

EXHIBIT C

## Policy Endorsement

Policy number:  **916 696 485**
Policy effective date:  February 24, 2015
Your Allstate agency is  Joe Hancock
(936) 634-4451

**Allstate.**
You're in good hands.

Page **1** of 2

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Texas Amendatory Endorsement – AS321-1

I.  In the **General** section, the **Cancellation** provision is replaced by the following:

**Cancellation**
1.  **You** may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send **you** any refund due when the policy is returned to **us** not later than the 15th business day after the effective date of the cancellation.

2.  If this policy has been in effect for less than 60 days and is not a renewal policy **we** may cancel this policy if:
    a)  **we** identify a condition that:
        1)  creates an increased risk of hazard;
        2)  was not disclosed in the application for insurance coverage; and
        3)  is not the subject of a prior claim; or
    b)  before the effective date of the policy, **we** have not accepted a copy of a required inspection report that:
        1)  was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and
        2)  is dated not earlier than the 90th day before the effective date of the policy.

    An inspection report is deemed accepted unless **we** reject it before the 11th day after the report is received by **us**.

3.  **We** may also cancel this policy at any time for any of the following reasons:
    a)  **you** do not pay the premium or any portion of the premium when due.
    b)  the Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.
    c)  **you** submit a fraudulent claim.
    d)  there is an increase in the hazard covered by this policy that is within **your** control and that would

produce an increase in the premium rate of this policy.

4.  The effective date of cancellation cannot be before the 10th day after **we** mail the notice if **we** cancel for any of the reasons in paragraph 3. or the 30th day after **we** mail notice if **we** cancel for any other reason. **Our** notice of cancellation must state the reason for cancellation.

5.  If **we** cancel, **our** notice to **you** will state that if the refund is not included with the notice, it will be returned not later than the 15th business day after the effective date of the cancellation.

6.  **We** may not cancel this policy solely because **you** are an elected official.

II.  In **Section I Additional Protection**, item 1., **Additional Living Expense** is replaced by the following:

1.  **Additional Living Expense**
    **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** makes **your residence premises** uninhabitable. However, additional living expense due to **remediation** of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**.

    Payment for covered additional living expense as a result of a covered loss under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** will be limited to the least of the following:
    a)  the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
    b)  if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
    c)  six consecutive months from the time of loss.

    In no event shall **our** payment for additional living expenses exceed the amount shown on **your** Policy Declarations for **Additional Living Expense**.



**EXHIBIT C**

Policy endorsement
Policy number:        **916 696 485**
Policy effective date:    February 24, 2015
Your Allstate agency is    Joe Hancock
                           (936) 634-4451

Page **2** of 2

The periods of time referenced above are not limited by the termination of this policy.

No deductible applies to this protection.

III.  In **Section I Conditions**, under item 5., **How We Pay For A Loss**, the first paragraph of item d) is replaced by the following:

d)  Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Personal Property Protection–Coverage C**, **we** will make additional payment to reimburse you for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 365 days of the actual cash value payment unless **you** request in writing that this time limit be extended for an additional 180 days.

All other policy terms and conditions apply.

060 032 042
150110500022234
2I0000050022340607X00015011004592500252000601602371B

EXHIBIT C

## Important notices

Policy number: **916 696 485**
Policy effective date: February 24, 2015
Your Allstate agency is Joe Hancock
(936) 634-4451



Page **1** of 13

## Your Property Is Covered On an Actual Cash Value Basis

We'd like to remind you that your policy provides actual cash value coverage. So if you experience a covered loss, we will pay for a loss to your covered property on an actual cash value basis, meaning there may be a deduction for depreciation.

The estimated actual cash value for your property is the estimated limit assigned to your policy when it was first written, and was based on data that was available to us at the time the estimate was made. This includes dwelling details such as the interior and exterior of each room, additional structures, heating and cooling, as well as additional options. Keep in mind, however, the actual amount it will cost to repair or replace your property cannot be known until after a covered total loss has occurred.

More information about the characteristics that were used in this estimate is provided in the "Rating Information" section of your Policy Declarations.

If this information requires any change or if you have any questions or concerns about the information contained in this Important Notice, please contact your Allstate representative.

X67678-1

## Notice of Changes to Your Manufactured Home Policy

From time to time Allstate will revise your coverage. We've included an Amendatory Endorsement (#AS321-1) in this mailing package that changes parts of your contract. Please read this endorsement and keep it with your Manufactured Home policy.

We're also providing you with the following summary. We hope you find it informative and useful, but keep in mind that it's not part of your contract. Always reference your policy documents for your exact coverage details.

If you have any questions about this notice or your policy coverage, you can contact your Allstate representative, call 1-800-ALLSTATE℠ (1-800-255-7828), or visit www.allstate.com. We're here to help!

### Summary Of Changes

We have updated the **Additional Living Expense** provision under **Section I Additional Protection**. We have added a maximum dollar limit for this coverage as displayed on your Policy Declarations. In addition, we have extended the time for which additional living expenses are available from three months to six months, subject to the dollar limit shown on your Policy Declarations.

We have removed coverage for lost fair rental income.

We have updated the **How We Pay For A Loss** provision under **Section I Conditions**. We will reimburse you above the actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 365 days of the actual cash value payment unless you request in writing that this time limit be extended for an additional 180 days.

**XC3502**

## Notice of Changes to Your Manufactured Home Policy

From time to time Allstate will revise your coverage. We've included an Amendatory Endorsement (#AS467) in this mailing package that changes parts of your contract. Please read this endorsement and keep it with your Manufactured Home policy.

We're also providing you with the following summary. We hope you find it informative and useful, but keep in mind that it's not part of your contract. Always reference your policy documents for your exact coverage details.

If you have any questions about this notice or your policy coverage, you can contact your Allstate representative, call 1-800-ALLSTATE℠ (1-800-255-7828), or visit www.allstate.com. We're here to help!

### Summary Of Changes

**How We Pay For A Loss–Coverages A and B**

We have changed the **How We Pay For A Loss** provision for loss to property under Coverage A and Coverage B.



EXHIBIT C

Important notices                                                    Page **2** of 13
Policy number:            916 696 485
Policy effective date:    February 24, 2015
Your Allstate agency is   Joe Hancock
                          (936) 634-4451

For item a) 3), we have added that payment will not exceed the limit of liability applicable to the damaged, destroyed or stolen property "regardless of the number of **building structures** or other structures involved in the loss."

We have also added: "Payment will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures."

**How We Pay For A Loss–Coverage C**

Customers now have the option to select Personal Property Reimbursement for Coverage C. If Personal Property Reimbursement is selected, customers will be reimbursed for the cost in excess of actual cash value if the damaged, destroyed or stolen property or wall-to-wall carpeting is repaired, rebuilt or replaced within 365 days of the actual cash value payment, subject to the exclusions and limits described in the Actual Cash Value Loss Settlement Endorsement.

If Personal Property Reimbursement is not selected, losses to items under Coverage C will be settled on an actual cash value basis as described.

**How We Pay For A Loss–Coverages A, B and C**

No other **How We Pay For A Loss** provisions in any other policy forms apply.

                                                              **XC3505**

# What You Should Know About Flood Insurance

Most homeowners, renters and commercial insurance policies do not provide coverage for flood damage. In fact, protection against floods is generally available only through a separate policy.

That's why Allstate is a participant in the National Flood Insurance Program (NFIP) and offers standard flood insurance policies.* A flood insurance policy can help complete the insurance protection for your property and help protect your financial well-being.

## You May Have More Risk from Flood Than You Think

Approximately 90 percent of all disasters in the U.S. are flood related. While you may think that it couldn't happen to you,

over 25 percent of all flood losses occur in low- to moderate-risk areas.

What's more, flood damage is often accompanied by other damage, such as wind and hail (which is typically covered under a property policy). So if you purchase your NFIP coverage through Allstate, you would have the convenience and peace of mind that comes with working with just one claim adjuster and one agent, instead of two or more for a flood claim.

## Flood Coverage Is Affordable

The federal government sets the rates for flood insurance, so there's typically no difference in rates from policy to policy. You can switch to an NFIP flood insurance policy administered by Allstate for the same amount of premium you may be paying elsewhere. If you choose Allstate, you can have the quality service you've come to expect from us.

For more information about flood insurance, or if you have any questions about your policy in general, please contact your Allstate representative or visit us at allstate.com.

* Allstate provides the standard flood insurance policy under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations. The standard flood insurance policy is written by Allstate for the National Flood Insurance Program which is administered by the Federal Insurance Administration, part of the Federal Emergency Management Agency.

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

                                                              **X73168**

# Additional Protection for Your Most Valuable Possessions

Property insurance covers many belongings, but some items may require higher coverage limits than those in a standard property policy.

Scheduled Personal Property (SPP) coverage gives you additional protection against loss or damage to your valuables. It's protection not typically provided with standard property coverage. SPP benefits typically include:

- No deductibles to meet
- Coverage for lost or damaged items

060 032 042
150105002234
2100000500223406GTX000150110045925002649007016023718

EXHIBIT C

Important notices
Policy number:       **916 696 485**
Policy effective date:  February 24, 2015
Your Allstate agency is  Joe Hancock
                        (936) 634-4451



Page **3** of 13

- Coverage for valuables kept in a storage location outside your home

### Items That May Need the Extra Protection
SPP coverage provides protection for an array of valuable personal property. Here are some of the items you can protect by purchasing SPP coverage through Allstate:

- Jewelry (including wedding rings and precious or semi-precious stones)
- Furs
- Cameras (digital, still, movie, video and related equipment)
- Silverware and antiques (including furniture)
- Musical instruments
- Collections (stamps, coins, music)
- Fine art works (including paintings, etchings, vases and sculptures)
- Manuscripts or books
- Home-office equipment (laptop, computer, audio/visual)
- Sports equipment (such as golf clubs)

### Affordable Protection for Your Valuables
The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need. The rates are generally a small percentage of the total value of the items you're insuring. This means that your valuables are being protected for only a fraction of the cost.

### Regularly Review Your SPP Coverage
Even if you currently have SPP coverage, it's a good idea to review it annually. It's possible that the value of your property has changed or that you've purchased new items that have not been added to your coverage.

To learn more about SPP coverage, or if you have any questions about your insurance policy in general, contact your Allstate representative, or visit us at allstate.com.

**X73169**

## Consumer Bill Of Rights Homeowners, Dwelling & Renters Insurance

AVISO: Este documento es un resumen de sus derechos como asegurado. Usted tiene el derecho a llamar a su compañía y pedir una copia de estos derechos en español.

### What is the Bill of Rights?

This Bill of Rights is a summary of your rights and does not become a part of your policy. The Texas Department of Insurance (TDI) adopted the Bill of Rights and requires insurance companies to provide you a copy when they issue your policy.

Texas law gives you certain rights regarding your homeowners, dwelling and renters insurance. This Bill of Rights identifies your rights specified by rule or by state statute, but it does not include all your rights. Also, some exceptions to the rights are not listed here. Legislative or regulatory changes to statutes or rules may affect your rights as an insured. If your agent, company, or adjuster tells you that one of these rights does not apply to you, contact TDI's Consumer Protection Program at 1-800-252-3439 (463-6515 in Austin), by mail at Mail Code 111-1A, P.O. Box 149091, Austin, TX 78714-9091, or by email at *ConsumerProtection@tdi.state.tx.us.* For a list of the specific law(s) and/or rule(s) summarized in each item of this Bill of Rights, or if you have questions or comments contact the Office of Public Insurance Counsel (OPIC) toll free at 1-877-611-6742, by mail at 333 Guadalupe, Suite 3-120, Austin, TX 78701, or visit the OPIC website at *www.opic.state.tx.us.*

This Bill of Rights does not address your responsibilities. Your responsibilities concerning your insurance can be found in your policy. Failure to meet your obligations may affect your rights.

**Getting information from the Department of Insurance and your insurance company**

1. **INFORMATION FROM TDI.** You have the right to call TDI free of charge at 1-800-252-3439 or 463-6515 in Austin to learn more about:

- your rights as an insurance consumer;
- the license status of an insurance company or agent;
- the financial condition of an insurance company;
- the complaint ratio and type of consumer complaints filed against an insurance company;
- use of credit information by insurance companies, including which insurance companies use it and access to each company's credit scoring model;
- an insurance company's rates filed with the state;



EXHIBIT C

Important notices
Policy number:        916 696 485
Policy effective date:  February 24, 2015
Your Allstate agency is  Joe Hancock
                        (936) 634-4451

- an insurance company's underwriting guidelines (subject to exemptions in the Public Information Act, also known as the Open Records Act);
- the Texas FAIR Plan, designed to help consumers who have been denied coverage by at least two insurance companies; and
- other consumer concerns.

You can also find some of this information on the TDI website at *www.tdi.texas.gov*.

At *www.helpinsure.com*, Texans can find more detailed information on their current and prospective insurers. TDI, in conjunction with OPIC, maintains this website to help Texans shop for residential property insurance and personal automobile insurance. For companies writing in Texas that are in the top 25 company groups nationally, the site also includes:

- a list of insurers by county and/or ZIP code;
- detailed contact information for each insurer;
- sample rates and a brief history of increases and/or decreases in the rates;
- policy form comparisons;
- a list of policy forms, exclusions, endorsements, and discounts offered by each insurer; and
- non-confidential disciplinary actions against each insurer.

2. ***INFORMATION FROM YOUR INSURANCE COMPANY*** . You have the right to a toll-free number to call your insurance company free of charge with questions or complaints. You can find this number on a notice accompanying your policy. This requirement does not apply to small insurance companies.

## What you should know before you buy insurance

3. ***PROHIBITED STATEMENTS.*** Your insurance company or agent is prohibited from making false, misleading, or deceptive statements to you relating to insurance.

4. ***LENDER-REQUIRED INSURANCE.*** A lender cannot require you to purchase insurance on your property in an amount that exceeds the replacement cost of the dwelling and its contents as a condition of financing a residential mortgage or providing other financing arrangements for the property, regardless of the amount of the mortgage or other financing arrangements. In determining the replacement cost of the dwelling, a lender cannot include

the fair market value of the land on which a dwelling is located.

5. ***CREDIT INFORMATION.*** An insurance company cannot deny you insurance solely on the basis of credit information. Insurers who use credit information must also consider other underwriting factors independent of credit information when deciding whether to offer coverage. (For additional information see the section of this Bill of Rights titled *What you should know about insurance companies' use of credit information.*)

6. ***APPLIANCE-RELATED WATER DAMAGE CLAIMS.*** An insurance company cannot deny you insurance or increase your premium based on a prior appliance-related water damage claim if:

- the damage has been properly repaired or remediated; and
- the repair or remediation was inspected and certified.

NOTE: A company can use an appliance-related water damage claim if you file three or more such claims in a three-year period and the company has paid the claims. A claim includes a claim filed by you or a claim filed on your property.

7. ***WATER CLAIMS/MOLD DAMAGE OR CLAIMS.*** An insurance company cannot deny you insurance based solely on a single prior water damage claim. An insurance company also cannot deny you insurance because of prior mold damage or a prior mold claim if:

- the damage or claim was properly repaired or remediated; and
- the repair or remediation was inspected and certified.

NOTE: A claim includes a claim filed by you or a claim filed on your property.

8. ***PROPERTY CONDITION.*** Voluntary Inspection Program: You have the right to have an independent inspection of your property by any person authorized by the Commissioner of Insurance to perform inspections. Once the inspector determines that your property meets certain minimum requirements and issues you an inspection certificate, no insurer may deny coverage based on property conditions without reinspecting your property. If an insurer then denies coverage, the insurer must identify, in writing, the specific problem(s) that makes your property uninsurable. You can find a list of available

060 032 042
150105002234
Z!0000005002234060TX0005011004592S00264900080162377!8

EXHIBIT C

Important notices
Policy number:        **916 696 485**
Policy effective date:  February 24, 2015
Your Allstate agency is   Joe Hancock
                        (936) 634-4451


You're in good hands.

Page **5** of 13

inspectors on the TDI website at *www.tdi.texas.gov/company/vipagnt.html* or you can contact TDI for the list directly at 1-800-252-3439.

9. **SAFETY NET.** You have the right to buy basic homeowners insurance through the Texas Fair Access to Insurance Requirements Plan, also known as the Texas FAIR Plan, if you have been denied coverage by two insurance companies. Your property must meet certain requirements, and eligibility for FAIR Plan coverage must be re-established every two years. You can access a list of insurance agents who are authorized to sell this coverage on the Texas FAIR Plan Association website at *www.texasfairplan.org* or by calling 1-800-979-6440 (505-2200 in Austin).

10. **WINDSTORM COVERAGE.** For property located in areas designated by the Commissioner in certain counties on or near the coast, you may have the right to buy windstorm and hail coverage from the Texas Windstorm Insurance Association (TWIA), if you have been denied windstorm coverage by one insurance company in the standard market currently providing windstorm coverage. Your property must meet certain requirements, and eligibility for TWIA coverage must be re-established every 3 years. You may have to re-establish eligibility sooner than every 3 years if you have made any repairs or alterations to your home. Windstorm coverage through TWIA is limited to a maximum amount set each year by the Commissioner of Insurance. This right applies whether or not you buy other insurance for your house. In all other counties your homeowners or dwelling policy includes windstorm and hail coverage unless you request that this coverage be removed from your policy.

NOTE: If you live in a certain flood zone (Zone V, Zone VE and Zone V1-130) and your dwelling was constructed, altered, remodeled, or enlarged after September 1, 2009, you must purchase flood insurance through the National Flood Insurance Program (NFIP) in order to be eligible to purchase windstorm coverage through TWIA. However, if NFIP does not provide flood insurance in your area, you are not required to purchase it.

11. **ELECTRONIC PAYMENTS.** If you authorize your insurer to withdraw your premium payments directly from your financial institution, including your escrow account, your insurer cannot increase the amount withdrawn unless:

- the insurer notifies you by U.S. mail of the increase in premium at least 30 days prior to its effective date; and

- you do not notify the insurer that you object to the increase in the amount to be withdrawn at least 5 days prior to the increase.

The notice provided by the insurer must include a toll-free number, a mailing address and an email address (if applicable), through which you can contact the insurer to object to the increase.

NOTE: This does not apply to premium increases specifically scheduled in the original policy, to increases based on policy changes you request, or to an increase that is less than $10 or 10% of the previous month's payment.

12. **NOTICE OF REDUCED COVERAGE.** If an insurer uses an endorsement to reduce the amount of coverage provided by your policy, the insurer must give you a written explanation of the change made by the endorsement. The insurer must provide the explanation not later than the 30th day before the effective date of the new or renewal policy. An insurance company cannot reduce coverage during the policy period unless you request the change. If you request the change, the company is not required to provide notice.

13. **NOTICE OF PREMIUM INCREASE.** If your insurer intends to increase your premium by 10% or more upon renewal, the insurer must send you notice of the rate increase at least 30 days before your renewal date.

14. **EXPLANATION OF DENIAL.** Upon request, you have the right to be told in writing why you have been denied coverage. The written statement must fully explain the decision, including the precise incidents, circumstances, or risk factors that disqualified you. It must also state the sources of information used.

NOTE: The obligation to provide a written explanation applies to insurance companies directly. An independent agent does not have a specific duty to quote the lowest possible rate to a consumer or to provide a written statement explaining why the agent did not offer the consumer the lowest possible rate.

15. **CUSTOMER INQUIRY.** An insurance company cannot use a customer inquiry as a basis for denying you coverage or determining your premium.



EXHIBIT C

Important notices
Policy number:          **916 696 485**
Policy effective date:   February 24, 2015
Your Allstate agency is   Joe Hancock
                         (936) 634-4451

NOTE: A customer inquiry includes:

- general questions about your policy;
- questions concerning the company's claims filing process; and
- questions about whether the policy will cover a loss unless the question concerns specific damage that has occurred and that results in an investigation or claim.

**16. RATE DIFFERENTIAL WITHIN A COUNTY.** If an insurer subdivides a county for the purposes of charging different rates for each subdivision, the difference between the lowest and the highest rate cannot exceed 15% unless actuarially justified.

**17. RIGHT TO PRIVACY.** You have the right to prevent an insurance company, agent, adjuster or financial institution from disclosing your personal financial information to companies that are not affiliated with the insurance company or financial institution. Some examples are income, social security number, credit history and premium payment history.

If you apply for a policy, the insurance company or financial institution must notify you if it intends to share financial information about you and give you at least 30 days to refuse. This refusal is called "opting out." If you buy a policy, the insurance company or financial institution must tell you what information it collects about you and whether it intends to share any of the information, and give you at least 30 days to opt out. Agents and adjusters who intend to share your information with anyone other than the insurance company or financial institution must give you similar notices.

You can opt out at any time. Your decision to opt out remains in effect unless you revoke it.

These protections do not apply to information:

- publicly available elsewhere;
- insurance companies or financial institutions are required by law to disclose; or
- insurance companies or financial institutions must share in order to conduct ordinary business activities.

**What you should know about cancellation and nonrenewal**

Cancellation means that **before the end** of the policy period the insurance company:

- terminates the policy;
- reduces or restricts coverage under the policy; or
- refuses to provide additional coverage to which you are entitled under the policy.

Refusal to renew and nonrenewal mean the policy terminates **at the end** of the policy period. The policy period is shown on the declarations page at the front of your policy.

**18. LIMITATION ON CANCELLATION FOR HOMEOWNERS AND RENTERS POLICIES.** After your initial homeowners or renters policy with your company has been in effect for 60 days or more, that insurance company cannot cancel your policy unless:

- you don't pay your premium when due;
- you file a fraudulent claim;
- there is an increase in the hazard covered by the policy that is within your control and results in an increase in the premium rate of your policy; or
- TDI determines continuation of the policy would result in violation of insurance laws. If your policy has been in effect for less than 60 days, your insurance company cannot cancel your policy unless:
  - one of the reasons listed above applies;
  - the insurance company identifies a condition that:
    - creates an increase in hazard;
    - was not disclosed on your application; and
    - is not the subject of a prior claim; or
    - the insurance company rejects a required inspection report within 10 days after receiving the report. The report must be completed by a licensed or authorized inspector and cannot be more than 90 days old.

**19. LIMITATION ON CANCELLATION FOR DWELLING POLICIES.** After your initial dwelling policy with your company has been in effect for 90 days, that insurance company cannot cancel your policy unless:

- you don't pay your premium when due;
- you file a fraudulent claim;

060 032 042
1501105002234
2100000500022340460TX00015011004592500264900901602371B

EXHIBIT C

Important notices
Policy number:        916 696 485
Policy effective date:  February 24, 2015
Your Allstate agency is  Joe Hancock
                         (936) 634-4451



Page **7** of 13

- there is an increase in the hazard covered by the policy that is within your control and results in an increase in the premium rate of your policy; or
- TDI determines continuation of the policy would result in violation of insurance laws.

**20.** ***NOTICE OF CANCELLATION.*** To cancel your policy, your insurance company must mail notice at least 10 days prior to the effective date of the cancellation. Your policy may provide for even greater notice.

**21.** ***POLICYHOLDER'S RIGHT TO CANCEL.*** You have the right to cancel your policy at any time and receive a refund of the remaining premium.

**22.** ***CHANGE IN MARITAL STATUS.*** If your marital status changes, you have the right to continue your insurance coverage. You have a right to a new policy in your name that has coverages which most nearly approximate the coverages of your prior policy, including the same expiration date. The insurance company cannot date the new policy so that a gap in coverage occurs.

**23.** ***USE OF CLAIMS HISTORY TO NONRENEW OR DETERMINE RENEWAL PREMIUM.*** Your insurance company cannot use claims you filed as a basis to non-renew your policy unless:

- you file three or more claims in any 3-year period; and
- your insurer notified you in writing after the second claim that filing a third claim could result in nonrenewal of your policy.

Your insurance company cannot use the following types of claims to determine the number of claims you have filed or to determine the premium if your policy is renewed:

- claims for damage from natural causes, including weather-related damage;
- appliance-related water damage claims where the repairs have been inspected and certified; or
- claims filed but not paid or payable under the policy.

NOTE: An insurance company can count appliance-related claims if 3 or more such claims are filed and paid within a 3-year period.

**24.** ***USE OF CREDIT INFORMATION TO NONRENEW.*** An insurance company cannot refuse to renew your policy solely on the basis of credit information. Insurers who use credit information must also consider other underwriting factors independent of credit information when deciding whether to renew coverage. (For additional information see the section of this Bill of Rights entitled *What you should know about insurance companies' use of credit information.*)

**25.** ***NOTICE OF CHANGE IN POLICY FORM.*** Your insurer must notify you in writing of any difference between your current policy and each policy offered to you when the policy renews. In certain instances your insurance company must provide a comparison between the policy offered and the policies adopted by the Commissioner of Insurance.

**26.** ***NOTICE OF NONRENEWAL.*** If the insurance company does not mail you notice of nonrenewal at least 30 days before your policy expires, you have the right to require the insurance company to renew your policy.

**27.** ***EXPLANATION OF CANCELLATION OR NONRENEWAL.*** Upon request, you have the right to a written explanation of an insurance company's decision to cancel or nonrenew your policy. The written statement must fully explain the decision, including the precise incidents, circumstances, or risk factors that disqualified you. It must also state the sources of information used.

## What you should know when you file a claim

**28.** ***FAIR TREATMENT.*** You have the right to be treated fairly and honestly when you make a claim. If you believe an insurance company has treated you unfairly, call the TDI at 1-800-252-3439 (463-6515 in Austin) or download a complaint form from the TDI website at *www.tdi.texas.gov*. You can complete a complaint form on-line via the Internet or fax a completed form to TDI at 512-475-1771.

**29.** ***SETTLEMENT OFFER.*** You have the right to reject any settlement amount, including any unfair valuation, offered by the insurance company. You have the right to have your home repaired by the repair person of your choice.

**30.** ***EXPLANATION OF CLAIM DENIAL.*** Your insurance company must tell you in writing why your claim or part of your claim was denied.

**31.** ***TIMEFRAMES FOR CLAIM PROCESSING AND PAYMENT.*** When you file a claim on your own policy, you have the right to have your claim processed and paid promptly. If the insurance company fails to meet required claims processing and payment deadlines, you have the right to



EXHIBIT C

Important notices
Policy number:           **916 696 485**
Policy effective date:   February 24, 2015
Your Allstate agency is  Joe Hancock
                         (936) 634-4451

collect 18% annual interest and attorney's fees in addition to your claim amount.

Generally, within **15 calendar days**, your insurance company must acknowledge receipt of your claim and request any additional information reasonably related to your claim. Within **15 business days** (30 days if the company reasonably suspects arson) after receipt of all requested information, the company must approve or deny your claim in writing. The law allows the insurance company to extend this deadline up to **45 days** if it notifies you that more time is needed and tells you why.

After notifying you that your claim is approved, your insurance company must pay the claim within **5 business days**.

If your claim results from a weather-related catastrophe or other major natural disaster as defined by TDI, these claims handling deadlines are extended for an additional 15 days.

**32.** *RELEASE OF CLAIM FUNDS.* Often an insurance company will make a claim check payable to you and your mortgage company or other lender and will send it to the lender. In that case, the lender must notify you within 10 days of receipt of the check and tell you what you must do to get the funds released to you.

Once you request the funds from the lender, within 10 days the lender must:

- release the money to you; or
- tell you in specific detail what you must do to get the money released.

If the lender does not provide the notices mentioned above or pay the money to you after all requirements have been met, the lender must pay you interest on the money at 10% per year from the time the payment or the notices were due.

**33.** *NOTICE OF LIABILITY CLAIM SETTLEMENT.* Your insurance company must notify you if it intends to pay a liability claim against your policy. The company must notify you in writing of an initial offer to compromise or settle a claim against you no later than the 10th day after the date the offer is made. The company must notify you in writing of any settlement of a claim against you no later than the 30th day after the date of the settlement.

**34.** *INFORMATION NOT REQUIRED FOR CLAIM PROCESSING.* You have the right to refuse to provide your insurance

company with information that does not relate to your claim. In addition, you may refuse to provide your federal income tax records unless your insurer gets a court order or your claim involves lost income or a fire loss.

## What you should know about prohibited discrimination

**35.** *PROTECTED CLASSES.* An insurance company cannot discriminate against you by refusing to insure you; limiting the amount, extent or kind of coverage available to you; charging you a different rate for the same coverage; or refusing to renew your policy:

- because of race, color, religion, gender, marital status, disability or partial disability, or national origin; or
- unless justified by actual or anticipated loss experience, because of age or geographic location.

**36.** *AGE OF HOUSE.* An insurance company cannot refuse to insure your property based on the age of your house. However, an insurance company may refuse to sell you insurance coverage based on the condition of your property, including the condition of your plumbing, heating, air conditioning, wiring and roof.

**37.** *VALUE OF PROPERTY.* An insurance company cannot refuse to insure your property because the value is too low or because the company has established minimum coverage amounts.

**38.** *UNDERWRITING GUIDELINES.* Underwriting guidelines may not be unfairly discriminatory and must be based on sound actuarial principles.

**39.** *EQUAL TREATMENT.* Unless based on sound actuarial principles, an insurance company may not treat you differently from other individuals of the same class and essentially the same hazard. If you sustain economic damages as a result of such unfair discrimination, you have the right to sue that insurance company in Travis County District Court.

If your suit prevails, you may recover economic damages, court costs and attorney and necessary expert witness fees. If the court finds the insurance company knowingly violated your rights, it may award up to an additional $25,000 per claimant.

You must bring the suit on or before the second anniversary of the date you were denied insurance or the unfair act occurred or the date you reasonably should have

060 032 042
1501105002234
ZI000005002234060TX0001501100459250026490100I6023718

EXHIBIT C