## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| **DAPHNE NOBLE FREE,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 9:20-cv-00190** |
| | § | |
| **ALLSTATE INDEMNITY** | § | **JUDGE MICHAEL J. TRUNCALE** |
| **COMPANY,** | § | |
| | § | |
| *Defendant.* | | |

## <u>PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SCHEDULING A FINAL APPROVAL HEARING, AND MEMORANDUM OF LAW IN SUPPORT</u>

1

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ..................................................................................... i

I.      NATURE AND STAGE OF THE PROCEEDING .................................... 1

II.     INTRODUCTION .................................................................................... 1

III.    BACKGROUND AND PROCEDURAL HISTORY ................................. 3

        A.      Texas Law Regarding Total Loss by Fire of Insured Real
                Property ...................................................................................... 3

        B.      Plaintiff's Policy and Individual Claims ............................................ 3

        C.      Plaintiff's Class Claims .................................................................... 6

IV.     SUMMARY OF SETTLEMENT TERMS ................................................ 12

        A.      The Class ..................................................................................... 12

        B.      Class Member and Settlement Class. .................................................. 13

        C.      Settlement Class Members' Recovery Under Settlement ................ 13

        D.      Aggregate and Average Value of Relief To The Settlement Class
                .................................................................................................... 14

        E.      Range Of Individual Claim Values ................................................ 15

        F.      Exemplars ..................................................................................... 15

        G.      Disputes And Neutral Evaluator ...................................................... 16

        H.      The Release of Claims .................................................................... 17

        I.      Attorneys' Fees, Costs, and Expenses ............................................. 17

        J.      The Class Notice ............................................................................ 17

V.      THE SETTLEMENT CLASS IS CERTIFIABLE UNDER RULE 23. ..... 18

        A.      The Settlement Class Meets the Requirements of Rule 23(a). ........ 19

                1.      Numerosity .......................................................................... 19

2.  Commonality ............................................................ 20

3.  Typicality ................................................................ 21

4.  Adequacy ............................................................... 21

B.  The Settlement Class Meets The Requirements Of Rule 23(b). ...... 22

1.  Predominance ........................................................ 22

2.  Superiority ............................................................. 23

VI.  THE SETTLEMENT MERITS PRELIMINARY APPROVAL. ............... 24

A.  The Court Should Grant Preliminary Approval Because the Proposed Settlement Satisfies the Requirements Of Rule 23 And Fifth Circuit Precedent. ..................................................... 24

B.  The Fifth Circuit Factors: The Settlement Achieves an Excellent Result for The Class, Particularly Given the Expense, Duration and Uncertainty Of Continued Litigation. ......................................... 26

1.  The Adequacy of Representation ........................................... 26

2.  The Lack of Fraud or Conclusion ........................................... 28

3.  Adequacy of Relief ........................................................ 29

a.  Complexity, Expense and Likely Duration of the Litigation ................................................................. 30

b.  The Stage of the Proceedings .................................. 30

c.  Likelihood of Success on the Merits and the Range of Possible Recovery .................................................. 31

d.  The Opinions of Class Counsel and Class Representatives and the Reaction of Class Members .................................................................. 33

C.  Under Fifth Circuit Authority, It Is Appropriate For The Proposed Class Settlement To Include Claims Not Alleged In The Original Complaint. .................................................. 34

D.    Plaintiff's Forthcoming Motion Requesting Attorneys' Fees and Costs Falls Within the Range of Reasonableness Sufficient to Allow Preliminary Approval and Notice to the Class....................... 36

VII.    CONCLUSION ................................................................................ 38

# INDEX OF AUTHORITIES

**Page(s)**

CASES

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................... 18, 22, 23

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................ 19

*Bailey v. AK Steel Corp.*,
  No. 1:06-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ....................................... 38

*Batchelder v. Kerr-McGee Corp.*,
  246 F. Supp. 2d 525 (N.D. Miss. 2003) ............................................... 33, 37

*Berger v. Compaq Comput. Corp.*,
  257 F.3d 475 (5th Cir. 2001) ................................................................. 27

*Bethea v. Sprint Comm. Co. L.P.*,
  No. 12-322, 2013 WL 228094 (S.D. Miss. Jan. 18, 2013) ................................... 37, 38

*In re Catfish Antitrust Litig.*,
  939 F. Supp. 493 (N.D. Miss. 1996) ........................................................ 37

*In re Chinese-Manufactured Drywall Products Liab. Litig.*,
  424 F. Supp. 3d 456 (E.D. La. 2020) ................................................ 28, 29, 30, 31, 33

*Claudet v. Cytec Ret. Plan*,
  No. 17-10027, 2020 WL 3128611 (E.D. La. June 12, 2020) ..................................... 29

*Cole v. Collier*,
  No. 14-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018) ........................................ 38

*Cook v. Howard Indus., Inc.*,
  No. 11CV41, 2013 WL 943664 (S.D. Miss. Mar. 11, 2013) ...................................... 37

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ................................................................ 35

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...................................................... 25, 30, 33

iv

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................. 38

*Funeral Consumers All., Inc. v. Serv. Corp. Intern.*,
   695 F.3d 330 (5th Cir. 2012) .................................................................................... 23

*Hill v. Hill Bros. Constr. Co., Inc.*,
   No. 14-213, 2018 WL 280536 (N.D. Miss. Jan. 3, 2018) .................................... 33, 37

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001) .................................................................................... 21

*Jenkins v. Trustmark Nat. Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) .......................................................... 25, 30, 32, 33

*Jones v. Singing River Health Servs. Foundation*,
   865 F.3d 285 (5th Cir. 2017) .................................................................................... 35

*Jones v. Singing River Health Sys.*,
   No. 14-447, 2016 WL 6106518 (S.D. Miss. Jan. 20, 2016) .................................. 26, 36

*Kemp v. Tower Loan of Miss., LLC*,
   No. 15-499, 2017 WL 3426240 (S.D. Miss. Aug. 8, 2017) .................................. 26, 28

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ...................................................................... 25

*Manners v. Am. Gen. Life Ins. Co.*,
   No. 3-98-0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ............................ 37

*Mitchell v. State Farm Fire & Cas. Co.*,
   327 F.R.D. 552 (N.D. Miss. 2018),
   *aff'd by* 954 F.3d 700 (5th Cir. 2020) ........................................................... 19, 21, 22

*Nelson v. Waring*,
   602 F. Supp. 410 (N.D. Miss. 1983) .......................................................................... 32

*Owens v. Southern Hens, Inc.*,
   No. 07-28, 2009 WL 10722485 (S.D. Miss. July 27, 2009) ...................................... 28

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) .................................................................................. 31

*In re Pool Prods. Market Antitrust Litig.*,
   310 F.R.D. 300 (E.D. La. 2015) ................................................................................ 26

v

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ...................................................................... 25, 29, 31

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000) .................................................................... 29

*Simms v. Jones*,
    296 F.R.D. 485 (N.D. Tex. 2013) ........................................................................ 19

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) .............................................................................. 21

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ........................................................................ 25, 37

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................ 19, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................. 35

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) .............................................................................. 19

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) .............................................................................. 19

## RULES

FED. R. CIV. P. 23(5) ................................................................................................. 9

FED. R. CIV. P. 23(a)(2) ......................................................................................... 20

FED. R. CIV. P. 23(a)(3) ......................................................................................... 21

FED. R. CIV. P. 23(b)(3) ................................................................................... 22, 23

FED. R. CIV. P. 23(e) .............................................................................................. 24

FED. R. CIV. P. 23(e)(1)(B) .................................................................................... 24

FED. R. CIV. P. 23(e)(2) ......................................................................................... 25

FED. R. CIV. P. 23(e)(3) ......................................................................................... 24

STATUTES

TEX. INS. CODE § 862.053 ............................................................................. 3, 23

TEX. INS. CODE § 863.053 ............................................................................. 4, 5

OTHER AUTHORITIES

William Rubenstein, NEWBERG ON CLASS ACTIONS (5th ed.)
    (Dec. 2021 Update) ...................................................... 18, 20, 21, 23, 29, 34

Wright and Miller, 7B FEDERAL PRAC. AND PROC. (3d ed.)
    (Dec. 2021 Update) ................................................................................ 18, 23

## I.    NATURE AND STAGE OF THE PROCEEDING

The parties have settled claims brought by Plaintiff Daphne Noble Free (Plaintiff), individually and on behalf of herself and the proposed Settlement Class, and plaintiff submits this UNOPPOSED[1] Motion for Preliminary Approval of Class Settlement [Doc. ___], certification of settlement class, and scheduling of a final approval hearing.

## II.    INTRODUCTION

The Settlement Agreement reached between Plaintiff and Defendant Allstate Indemnity Company (Defendant) (the Settlement) is attached as Exhibit 1 to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Stipulation and Settlement, filed concurrently herewith.[2]

Plaintiff's dwelling, a manufactured home, suffered a total loss by fire on June 18, 2015. Plaintiff's property was covered by a policy issued by Defendant at the time (the Policy). This statewide class action arises out of Defendant's settlement of Plaintiff's claim (and putative class claims) against the Policy and substantially similar policies based on the total loss by fire. The parties to this Action dispute whether Defendant appropriately handled and paid Plaintiff's claim and, as discussed in greater detail below, the claims of similarly situated putative class members.

Plaintiff seeks the Court's preliminary approval of this Settlement under Federal

---

[1] Defendant denies each allegation of liability, wrongdoing, and damages, and believes it has substantial factual and legal defenses to all claims and class allegations, and substantial defenses to class certification were liability at issue absent settlement. Pursuant to settlement, however, Defendant does not oppose this motion.

[2] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Settlement Agreement, attached as Exhibit 1 to Plaintiff's Unopposed Motion, filed concurrently herewith.

Rule of Civil Procedure (Rule) 23(e)(1) so that notice of the Settlement can be disseminated to the proposed Class and the Final Approval Hearing scheduled. At the Final Approval Hearing, the Court will have before it additional submissions in support of the Settlement, as well as any objections that may be filed, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate.

As discussed below, Settlement involves potential class members of two groups of Defendant policyholders who insured a manufactured home and suffered a total loss by fire to their covered manufactured home or other structure: those with dates of loss of September 29, 2015 through the date the court conditionally approves the settlement agreement (Group A); and those with dates of loss of June 21, 2013 through September 28, 2015 (Group B). Settlement will result in the right to a significant recovery of the difference between what was paid on the claim by Defendant to date and the specific dollar amount listed on the policy declarations page for coverage of real property that experienced total loss by fire. For Group A, this recovery will be 92% of that difference, and Group B will receive 76% recovery. Both Group A and Group B will receive the right to obtain an additional recovery of 94% interest.

As discussed below, the proposed Settlement was reached through arm's-length bargaining and will result in a significant recovery for the Settlement Class. Accordingly, for the reasons set forth herein, Plaintiff submits that the Settlement warrants the Court's preliminary approval and respectfully requests that the Court enter the proposed Preliminary Approval Order attached as Exhibit A to the Settlement Agreement.

## III.    BACKGROUND AND PROCEDURAL HISTORY

This action and proposed settlement involve allegations that Defendant breached the terms of their property insurance policies with Plaintiff and other class members by wrongfully adjusting and paying claims for real property total loss by fire in violation of Texas law.

### A.    Texas Law Regarding Total Loss by Fire of Insured Real Property

Section 862.053 of the Texas Insurance Code provides:

(a) A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a **liquidated demand against the company for the full amount of such policy**. This subsection does not apply to personal property.

(b) An insurance company shall incorporate verbatim the provisions of Subsection (a) in each fire insurance policy issued as coverage on real property in this state.

(c) The commissioner shall require compliance with this section

TEX. INS. CODE § 862.053 (emphasis added).

### B.    Plaintiff's Policy and Individual Claims

Plaintiff's policy at issue (the Policy) included a Texas Manufactured Home Policy – Actual Cash Value Loss Settlement Endorsement – AS467, stated that loss to insured property "will be settled on an actual cash value basis. This means there may be a deduction for depreciation." [Doc. 5-1] *See* PageID:1837-38. The endorsement also states: "Payment will not exceed the smallest of: (1) the actual cash value of the damaged, destroyed or stolen property at the time of loss; (2) the amount necessary to repair or replace the damaged, destroyed or stolen property with other of like kind and quality; or (3) the limit of liability applicable to the damaged, destroyed or stolen property regardless

3

of the number of building structures or other structures involved in the loss." [Doc. 5-1] *See* PageID:1837. Plaintiff's policy declarations included the following real-property coverages:

**Coverage detail** for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | Actual cash value up to $50,320 | • $500 All peril |
| Other Structures Protection | Actual cash value up to $5,032 | • $500 All peril |

[Doc. 5-1] *See* PageID:1834.

On June 21, 2017, Plaintiff filed this Action against Defendant. The suit was assigned to the 217th Judicial District Court, Angelina County, Texas, styled Cause No. CV-00412-17-06; *Daphne Noble Free v. Allstate Indemnity Company*. [Docs. 2-9, 2-10, 2-11] Based on Defendant's handling and payment of Plaintiff's total-loss-by-fire insurance claim, Plaintiff brought multiple causes of action including breach of contract (the Policy) and violation of section 863.053 of the Texas Insurance Code (the operative language of which was included in the Policy) and multiple other statutes. *Id.*; *see* TEX. INS. CODE § 863.053. Central to Plaintiff's claims is the allegation that, based on the declared limit of insurance, the "full value" of her Policy for purpose of section 863.053 was $50,320.00, and that Defendant improperly paid only $29,385.03—a difference of $20,934.97. *Id.* Plaintiff plead for recovery of actual damages, prejudgment and postjudgment interest, statutory damages, attorneys fees, and costs. *Id.*

The contract on which Plaintiff sues is a policy with an Actual Cash Value endorsement and a declaration that the full amount of real property coverage includes dwelling protection of "Actual cash value up to $50,3020." [Doc. 8-1] *See* PageID:1965. The central dispute between the Parties has centered on application of the "Actual cash

4

value up to $[specified dollar amount]" language on an Actual Cash Value policy in light of Texas Insurance Code section 862.053. *See* Tex. Ins. Code § 863.053. Defendant claims and has claimed that, if section 862.053 applies to policies with an actual cash value endorsement at all, the "full amount" of such policies with a declared property-coverage limit of "Actual cash value up to $[specified dollar amount]" is not stated within the policy or ascertained at the time of policy issuance. Rather, the policy limit in those instances is the actual cash value of the real property on the date of loss.

Allstate timely removed the Action to this Court on September 20, 2017 (the First Removal). [Doc. 2-15] The parties jointly moved the Court to remand the Action based on the parties' diversity and a stipulation that the amount in controversy in this case does not exceed seventy-five thousand dollars ($75,000.00), exclusive of interests and costs. [Doc. 2-1] On October 3, 2017, the Court remanded the Action to Texas state district court. [Doc. 2-16]

On April 25, 2018, Defendant filed a motion for partial summary judgment addressing Plaintiff's claim for breach of contract. [Doc. 2-21] On May 29, 2018, Plaintiff responded and filed her own competing Motion for Partial Summary Judgment as to Plaintiff's Breach of Contract Claim, seeking partial summary judgment on the issue of whether Defendant's actions in paying the $29,385.03 "actual cash value" of Plaintiff's property instead of the alleged $50,320.00 "full face value" of the policy on Plaintiff's total loss fire claim constituted a breach of contract (and breach of section 863.053) by Defendant. [Docs. 2-24, 2-25] On August 19, 2018, the state district court granted Plaintiff's Motion for Summary Judgment. [Doc. 2-30]

### C.    Plaintiff's Class Claims

On September 30, 2019, Plaintiff filed her *First Amended Class Action Petition and Request for Injunctive Relief*, asserting putative class claims for breach of contract and other causes of action. [Doc. 2-2] Paragraph 31 of the First Amended Petition defined the proposed "Class" or "Class Members" as follows:

> All Allstate insureds whose: (i) real property suffered a total loss by fire in the State of Texas within the past six years of the filing of suit through present, (ii) claim was accepted, (iii) claim was paid within the previous four (4) years of filing of this suit, and (iv) claim was paid less than the full "face value" amount of the insurance policy.

*Id. See* PageID:844-45.

Defendant filed special exceptions and a motion to strike Plaintiff's *First Amended Class Action Petition and Request for Injunctive Relief.* [Doc. 2-32, 2-33] Defendant specially excepted and moved to strike under the "one-way intervention" doctrine on the ground that the Petition improperly asserts putative class claims, for the first time, more than one year after obtaining a key, favorable merits ruling concerning the contract claim at the heart of the newly-asserted class allegations. [Doc. 2-33] Defendant also specially excepted and moved to strike on the grounds that the pleading failed to comply with Rule 47 by specifying the maximum amount claimed and, additionally, created confusion regarding the amount in controversy in light of Plaintiff's prior binding stipulation that the "amount in controversy in this case does not exceed seventy-five thousand dollars ($75,000.00), exclusive of interests and costs." [Docs. 2-32, 2-33] *See* PageID:1470.

During this Acton and beginning with Plaintiff's filing of her Plaintiff's *First Amended Class Action Petition and Request for Injunctive Relief* [Doc. 2-2], the Parties

have disputed whether the class as proposed in Plaintiff's pleadings is appropriate for class treatment or whether it would be properly certifiable under Rule 23 of the Federal Rules of Civil Procedure. Additionally, Defendant claimed and claims that the issues raised in Plaintiff's individual claim are shared by a small number of others; more specifically, (1) since June 21, 2011, the only policy type issued by Defendant in the State of Texas that provided real property coverage for actual cash value including the language "Actual cash value up to $[specific dollar amount]" in the limits of liability column on the policy declarations was Defendant's manufactured home policy, (2) since June 21, 2011 there has been only a small number of estimated total number of total loss fire claims for Defendant manufactured home policies issued in the State of Texas in which the limits of liability for dwelling coverage were paid the actual cash value of the properties that did not meet the full "up to" specific dollar amount stated in the limits of liability column on the policy declarations. During the course of this Action, Defendant filed a witness Declaration to that effect, presented that declarant (also Defendant's corporate representative) for deposition on October 26, 2021, and produced to Plaintiff the complete claim files for all such claims, redacted only to protect the personal information of the insureds other than Plaintiff herself.

On August 2, 2020, Plaintiff filed in state court her *Second Amended Class Action Petition and Request for Injunctive Relief*. [Doc. 2-3] Plaintiff's Second Amended Petition maintained the same breach-of-contract class allegations as Plaintiff's earlier Petitions. *Id.* Plaintiff pleaded that her individual damages are less than $75,000.00 and that the total damages suffered by each individual class member were, on belief, less than $75,000.00

7

excluding prejudgment interest and court costs. *Id. See* PageID:855. Plaintiff's proposed class did not change materially; Paragraph 31 of the First Amended Petition defined the proposed "Class" or "Class Members" as follows:

> All Allstate insureds (i) whose real property suffered a total loss by fire in the State of Texas within the past six years of the filing of suit through present (ii) whose claim was accepted, (iii) whose claim was paid within the previous four (4) years of filing of this suit, and (iv) whose claim was paid less than the full "face value" amount of the insurance policy.

*Id. See* PageID:867.

On September 2, 2020, Defendant filed a notice of removal to this Court (the Second Removal), invoking the Court's diversity jurisdiction based, in part, on Plaintiff's amended pleading that now claimed individual and putative class damages that now collectively exceeded one million dollars. [Doc. 2]

On September 9, 2020, Defendant filed its motion to strike the class claims asserted in Plaintiff's Second Amended Petition, based on the "one-way intervention" doctrine as previously raised in state court. [Docs. 5, 3-33 5] Later that day, Defendant filed its answer in this Court. [Doc. 6]

On September 22, 2020, Plaintiff filed her *Third Amended Class Action Complaint and Request for Injunctive Relief*, defining the Plaintiff's proposed class verbatim as in her *Second Amended Petition*. [Docs. 2-3, 8] *Compare* PageID:867 *with* PageID:1947. The next day, Plaintiff filed her response to Defendant's motion to strike. [ECF Doc. 10] Defendant then moved to strike class claims in Plaintiff's *Third Amended Class Action Complaint and Request for Injunctive Relief* on "one-way intervention" grounds similar to those raised earlier against Plaintiff's prior class-related pleadings. [Docs. 13, 2-33, 5]

8

On May 27, 2021,[3] the Court agreed with Defendant that allowing Plaintiff's partial summary judgment ruling to stand would likely create a one-way intervention problem because potential plaintiffs unknown to Allstate at the time partial summary judgment was granted would be able to take advantage of the favorable ruling. [Doc. 56] The Court dissolved and set aside the state court's grant of partial summary judgment in Plaintiff's favor. *Id.*

On September 16, 2021, Plaintiff moved for leave to amend her complaint, attaching a proposed *Plaintiff's Fourth Amended Complaint and Request for Injunctive Relief.* [Docs. 74, 74-1, 74-2] In Plaintiff's proposed pleading amendment, Plaintiff defined the proposed Class as defined in *Class Action Complaint and Request for Injunctive Relief* and also defined a Sub-Class as follows:

> All Allstate insureds (i) whose real property suffered a total loss by fire in the State of Texas within the past six years of the filing of suit through present (ii) whose claim was accepted, (iii) whose claim was paid within the previous four (4) years of filing of this suit, and (iv) whose claim was paid less than the full "face value" amount of the insurance policy.

> Sub Class [FN][4]: All Allstate insureds (i) whose policy language provided **fire loss** dwelling coverage for actual cash value ("dwelling policy) (ii) whose dwelling policy included the language "Actual cash value up to $[specific dollar amount] and (iii) whose policies were and/or are in effect within the previous six (6) years of the filing of this suit.

[Doc. 74-2] *See* PageID:3010.

---

[3] In the interim, Plaintiff moved for preliminary injunction relief [Doc. 22] and, after briefing by Defendant [Doc. 32], Plaintiff moved to withdraw its request for preliminary injunctive relief. [Doc. 36] The Court granted Plaintiff's motion to withdraw. [Doc. 37] Additionally, Defendant moved for protection from certain discovery [Doc. 38] and Plaintiff filed a response in opposition. [Doc. 43] The Court heard Defendant's motion. [Doc. 58] and, on June 16, 2021, entered an order denying the motion in part and granting the motion in part. [Doc. 59]

[4] Pursuant to FED. R. CIV. P. 23(5), "when appropriate, a class may be divided into subclasses that are each treated as a class under this rule." [footnote in original]

Defendant opposed Plaintiff's request for leave to amend her complaint to assert class allegations under a new proposed sub-class on the grounds that Plaintiff failed to show good cause under Rule 16(b) of the Federal Rules of Civil Procedure. [Doc. 75] Plaintiff's motion for leave to amend [Doc. 74] has been denied (without prejudice) as moot. [Doc. 93].

The Parties agreed to use Robert A. "Bob" Black as a private mediator to facilitate mediation, and the parties mediated on March 3, 2022. Although settlement was not reached at that time, the Parties agreed in principle to pursue settlement on a class-wide basis. Moreover, the Parties remained engaged with Mr. Black in ongoing settlement negotiations, seeking to explore whether their settlement discussions would be ultimately productive. [Doc. 85] The parties' ongoing negotiations included topics such as the scope of the Class and framework of Class-wide settlement in addition to payment structures. With the continued assistance of Mr. Black, the Parties reached settlement in principle on May 16, 2022, with additional details regarding settlement mechanics to be finalized at that time. Plaintiff filed notice of settlement on June 23, 2022. [Doc. 90]

Consistent with the highest ethical standards, and through mediator Mr. Black, the Parties negotiated potential attorneys' fees, costs and expenses only after relief to the Class was agreed to. Any award of attorneys' fees, costs, or expenses will not reduce the proposed amounts to be awarded to the Class.

Incorporating the Declaration of Mark Sparks, attached as Exhibit 2, by reference as if the same were set forth fully herein, Class Counsel submit that they have significant experience with first-party insurance claims, having represented insureds in numerous actions throughout Texas and the United States. Class Counsel further submit that they have significant experience with class and putative class actions throughout Texas and the

10

United States. Based upon this class action and insurance litigation experience, Class Counsel believe that the claims of Plaintiff and putative Class relating to the Defendant's handling and settlement of Texas total loss by fire property claims have significant merit. Class Counsel recognize and acknowledge, however, that prosecuting such claims through class certification, further fact and expert discovery, dispositive motions, trial, and appeals will involve considerable uncertainty, time, and expense.

Class Counsel has concluded that it is in the best interests of the Plaintiff and Class that the claims asserted against Defendant in the Action be resolved on the terms and conditions set forth in this Agreement. After extensive consideration and analysis of the factual and legal issues presented in the Action, and extensive and multiple settlement negotiation sessions, Class Counsel has reached the conclusion that the substantial benefits that Class Members will receive as a result of this Settlement are a very good result in light of the risks and uncertainties of continued litigation, the time and expense that would be necessary to prosecute the Action through trial and any appeals that might be taken, and the likelihood of success at trial.

Defendant has denied and continues to deny each and every allegation of liability, wrongdoing, and damages, as Defendant believes it has substantial factual and legal defenses to all claims and class allegations asserted in the Action. Defendant has always maintained, and continues to maintain, that it has acted in accordance with all applicable agreements and governing law. Nonetheless, Defendant has concluded that because continuing to defend against the claims and allegations in the Action would be protracted and expensive, it is desirable that such claims be fully and finally settled on a class-wide

basis (without any admission of fault or liability or admission as to the propriety of certification of a litigation class) in the manner and upon the terms set forth in this Agreement.

Without admitting any liability or wrongdoing, Defendant agrees to the terms of this Agreement, provided that Final Judgment approving the Settlement is entered in all material respects pursuant to this Agreement and all Released Claims are settled, compromised, and released, in order to resolve all issues in any way relating to Defendant's handling and settlement of Texas total loss by fire property claims that were asserted, or that could have been asserted, in the Action.

## IV.    SUMMARY OF SETTLEMENT TERMS

The following is a summary of settlement terms more fully set out in the Settlement Agreement (Settlement).

### A.    The Class

The "Class" means all to whom Defendant issued real property insurance (1) whose real property suffered a total loss by fire in the State of Texas from June 21, 2013 through the date the Court conditionally approves this Agreement, (2) whose claim was accepted by Defendant and whose loss was determined by Defendant to be a total loss by fire, (3) whose declarations, on the date of loss, listed the coverage limit of the real property that suffered the total loss by fire as Actual Cash Value "up to" a specified dollar amount, meaning a numeric amount of dollars or dollars and cents expressed in numbers, (4) Defendant paid the real-property-total-loss-by-fire claim at an amount less than the specified dollar amount for the coverage limit listed on the policy declarations. Of those satisfying the foregoing,

the Class is further broken into two Groups:

Group A:        Plaintiff and those with dates of loss of September 29, 2015 through the date the Court conditionally approves this Agreement; and

Group B:        Those with dates of loss of June 21, 2013 through September 28, 2015.

Based on claim and claim-file review, the Parties estimate the total potential number of Group A and Group B Class Members will be approximately 12 and 6, respectively, totaling 18. For purposes of this Agreement and Settlement, all dates of loss shall be determined by the Defendant based on information in the claim file for each Class Member as maintained by the Defendant. Class Member's group classification—in Group A or Group B or neither group—will be determined by the Defendant based on date of loss, subject to Claimant's right to challenge group classification. Settlement ¶ 2.8.

**B.    Class Member and Settlement Class.**

"Class Member" means any person who (a) is included within the definition of the Class and (b) does not timely and properly request exclusion from the Class. Settlement ¶ 2.10. The "Settlement Class" means all Class Members who do not timely and properly opt out. Settlement ¶ 2.31.

**C.    Settlement Class Members' Recovery Under Settlement**

The proposed Settlement provides that Defendant shall make the payment available to Class Members based on the following Calculation Methodology:

**Group A**: Class Members with dates of loss of September 29, 2015 through the date the court conditionally approves the settlement agreement, as more fully described in Settlement ¶ 2.8. Such class members will be paid according to the following formula, in the following steps, by the Administrator based on information provided to it by the Defendant as maintained in Defendant's claim file: (1) the difference

between (a) the specific dollar amount listed on the declarations page for coverage of real property that experienced total loss by fire and (b) the total amount of payment(s) made by Allstate on the real property loss related to the claim for total loss by fire, (2) applying a 8% discount (that is, paying at 92% of the difference between (a) and (b)) then (3) adding 94% interest to that amount per claim. To remove doubt and for the sake of clarity, the interest amount (step 3) is simple interest determined once (not compounded) and in the same manner for all Group A Class Members regardless of date of loss or otherwise.

**Group B**: Class Members with dates of loss of June 21, 2013 through September 28, 2015, as more fully described in Settlement ¶ 2.8. Such class members will be paid according to the following formula, in the following steps, by the Administrator based on information provided to it by the Defendant as maintained in Defendant's claim file: (1) the difference between (a) the specific dollar amount listed on the declarations page for coverage of real property that experienced total loss by fire and (b) the total amount of payment(s) made by Allstate on the real property loss related to the claim for total loss by fire, (2) applying a 24% discount (that is, paying at 76% of the difference between (a) and (b)) then (3) adding 94% interest to that amount per claim. To remove doubt and for the sake of clarity, the interest amount (step 3) is simple interest determined once (not compounded) and in the same manner for all Group B Class Members regardless of date of loss or otherwise.

### D.    Aggregate and Average Value of Relief To The Settlement Class

Based on claim and claim-file review, the Parties estimate the total potential payout to all Group A Settlement Class Members, including interest and assuming full participation, will be approximately $352,233.11. The per-claim average payout to Group A Settlement Class Members is estimated at approximately $29,352.76. Exhibit 2, Declaration of Mark Sparks (Sparks Declaration) ¶ 42.

Based on claim and claim-file review, the Parties estimate the total potential payout to all Group B Settlement Class Members, including interest and assuming full participation, will be approximately $222,320.51. The per-claim average payout to Group B Settlement Class Members is estimated at approximately $37,053.42. *Id.*

### E.    Range Of Individual Claim Values

14

The payments made available to Settlement Class Members will vary. The largest potential claim is believed to be approximately $82,126.97. *Id.*

F.    **Exemplars**

Plaintiff provides the following examples of potential claim payouts for hypothetical Class Members:

**Example 1**: A class member received $30,953.92 after a total loss by fire to her manufactured home on August 28, 2016 (placing her in Group A based on date of loss). The specific dollar amount listed on the declarations page for coverage of the manufactured home was $35,144.00, or $4,190.08 more than the total amount of payments received to date. If this class member submits a claim, she will receive $7,478.45 (92% of $4,190.08 plus an additional 94% of that amount).

**Example 2**: A class member received $43,023.63 after a total loss by fire to her manufactured home on November 12, 2014 (placing her in Group B based on date of loss). The specific dollar amount listed on the declarations page for coverage of the manufactured home was $71,362.00, or $28,338.37 more than the total amount of payments received to date. If this class member submits a claim, she will receive $41,782.09 (76% of $28,338.37 plus an additional 94% of that amount).

**Example 3**: A class member received $36,125.54 after a total loss by fire to her manufactured home on August 1, 2016 (placing her in Group A based on date of loss). The specific dollar amount listed on the declarations page for coverage of the manufactured home $49,167.00, or $13,041.46 more than the total amount of payments received to

15

date. If this class member submits a claim, she will receive $23,276.40 (92% of $13,041.46 plus an additional 94% of that amount).

G.    **Disputes And Neutral Evaluator**

Any Settlement Class Member may dispute (1) their group classification—Group A, Group B, or neither group—and (2) the application of the Calculation Methodology to their claim by requesting in writing a final and binding neutral resolution by the Neutral Evaluator. Settlement ¶¶ 7.9-7.11. Subject to Court approval, the Parties have agreed that Defendant will retain Dean Brinkley to serve as the Neutral Evaluator. *Id.* ¶ 2.20. All disputes received by the Neutral Evaluator from Settlement Class Members will be provided to Defendant's Counsel and Class Counsel, and Defendant will then have thirty (30) days to evaluate the claim or supply any additional documentation to the Administrator. *Id.* ¶ 7.10. From there, the Neutral Evaluator shall issue a decision based only on the written submissions of Defendant, Class Counsel, and the Settlement Class Member, and the decision of the Neutral Evaluator shall be final and binding. *Id.* ¶ 7.11.

H.    **The Release of Claims**

In return for these payments and other class relief, Plaintiff and the Class will provide Defendant a release narrowly tailored to the subject matter of this dispute—*i.e.*, claims related to real property total loss by fire of any kind on claims within the class period. Settlement ¶¶ 2.27, 9.1, 9.2, 9.3.

I.    **Attorneys' Fees, Costs, and Expenses**

Plaintiff's Counsel will seek as attorneys' fees, costs, and litigation expenses as Class Counsel, and Defendant agreed to pay, if Court approved, an amount no greater than

$350,000. Class Members' recoveries will not be reduced or enhanced by the amounts of attorneys' fees, costs, or litigation expenses paid. Settlement ¶¶ 13.1-13.5.

J.      **The Class Notice**

Defendant will separately pay for the mailing of the Class Notice, settlement administration, the Administrator, and reasonable fees, if any, incurred by the Neutral Evaluator. Settlement ¶ 4.1. All Class Members will be given direct-mailed First Notice and, if necessary, Second Notice, of the terms of the proposed Settlement at least seventy-five days prior to the Final Approval Hearing. Settlement ¶¶ 5.3-5.6. First Notice will be sent by first-class U.S. Mail (return postage prepaid) to each potential Class Member identified by Defendant at last known mailing address provided by Defendant. Settlement ¶ 5.3. For each Class Member who fails to contact the Administrator within 30 days of the Administrator's issuance of the First Notice, the Administrator will run searches specific to the name and last known address (as provided by Defendant) through (1) Lexis Nexis and (2) NOCA (National Change of Address) database and mail a Second Notice to such Class Member's most recent address. Settlement ¶ 5.4. First Notice and, if necessary, Second Notice will include Class Notice and a Claim Form. Settlement ¶¶ 5.3-5.6. Additionally, a postcard notice will be issued no later than forty-five (45) days before the Claim Deadline to each potential Class Member who has not at that time submitted a Claim Form and who has not timely and properly excluded themselves from the Settlement Class. Settlement ¶ 5.7. Additionally, the Administrator shall establish a toll-free phone number through which information may be provided about the Settlement utilizing relevant portions of the Class Notice and Claim Form; the phone number shall remain open and accessible through the

Claim Deadline and allow for Class Members to leave recorded messages and, at Defendant's option, may also provide for live operators during select times to answer certain basic questions about the Settlement. Settlement ¶ 5.9.

## V.    THE SETTLEMENT CLASS IS CERTIFIABLE UNDER RULE 23.

The proposed Settlement comes prior to formal class certification and seeks to certify a class simultaneous with a settlement, commonly referred to as "settlement classes." As such, this Court must first ensure that the proposed class certification meets the requirements of Rule 23(a) and (b)(3), with the exception that the Court need not consider, in analyzing a proposed settlement class, whether trial would present intractable management problems. *See generally* William Rubenstein, NEWBERG ON CLASS ACTIONS § 13:12 (5th ed.) (Dec. 2021 Update) (hereafter "NEWBERG"); Wright and Miller, 7B FEDERAL PRAC. AND PROC. § 1797.2 (3d ed.) (Dec. 2021 Update) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)).

While the Supreme Court reiterated that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), the requisite "rigorous analysis" of the record and consideration of the merits must be focused on and limited to the question of whether Rule 23's requirements have been established and, here, in the context of a proposed settlement class. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited, and district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits. *Id.* at 851-52; *accord Simms*

*v. Jones*, 296 F.R.D. 485, 496 (N.D. Tex. 2013) ("'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage' and merits questions may be considered only to the extent that they are 'relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met for the proposed settlement class.

### A.    The Settlement Class Meets the Requirements of Rule 23(a).

Plaintiff believes the following factors warrant certification of the proposed Settlement Class.

#### 1.    *Numerosity*

When analyzing numerosity, a district court uses its common sense. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012). Only a "reasonable estimate" is required to establish numerosity. *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 561 (N.D. Miss. 2018) (citation omitted), *aff'd by* 954 F.3d 700 (5th Cir. 2020). Based upon data review and extrapolation, counsel for both parties estimate that class notice will issue to approximately 18 potential Class Members. Numerosity is satisfied.

#### 2.    *Commonality*

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[T]he commonality requirement is not usually a contentious one ... and is easily met in most cases." NEWBERG §13:18. To demonstrate commonality, plaintiffs' "claims must depend upon a common contention...that is capable

of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[E]ven a single common question will do." *Id.* at 359.

Here, based on the class definitions there are common questions well suited for common answers through class resolution, principally whether Defendant violated Section 862.053 of the Texas Insurance Code and breached policy terms incorporating Section 862.053 for persons insured by Defendant whose real property suffered a total loss by fire during the class period, whose claim was accepted by Defendant and whose loss was determined by Defendant to be a total loss by fire, whose declarations, on the date of loss, listed the coverage limit of the real property that suffered the total loss by fire as Actual Cash Value "up to" a specified dollar amount, meaning a numeric amount of dollars or dollars and cents expressed in numbers, and Defendant paid the real-property-total-loss-by-fire claim at an amount less than the specified dollar amount for the coverage limit listed on the policy declarations.

### 3.    *Typicality*

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This inquiry focuses on "whether the class representative's claims have the same essential characteristics of those of the putative class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). Like the test for commonality, "the test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mitchell*, 327 F.R.D. at 561 (internal citation

omitted); NEWBERG § 3:29. Here, all claims are premised upon the same legal theories. Plaintiff's claims arise from the underpayment of her real property total-loss-by-fire claim and are identical to the claims of the putative class. Through these claims, Plaintiff seeks monetary relief for herself and all putative class members based on formula applicable to the entire class in two groups. Accordingly, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

### 4.    *Adequacy*

Adequacy under Rule 23(a)(4) is satisfied where a proposed class representative: (1) does not have conflicts with other members of the class, and (2) has retained qualified counsel. *Mitchell*, 327 F.R.D. at 562. Here, Plaintiff's interests are perfectly aligned with the proposed class, as she seeks to maximize everyone's recovery of compensatory damages and prejudgment interest. *Id.* Plaintiff retained counsel experienced in class actions and insurance law. Exhibit 2, Sparks Declaration ¶¶ 4-14.

### B.    The Settlement Class Meets The Requirements Of Rule 23(b).

To qualify for certification under Rule 23(b)(3), a settlement class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615. Again, however, in a settlement class situation, the Court does not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620.

21

1.    *Predominance*

Rule 23(b)(3) requires a party seeking class certification to "demonstrate … that questions common to the class members predominate over questions affecting only individual members." FED. R. CIV. P. 23(b)(3). This is a statewide Texas class: Section 862.053 of the Texas Insurance Code applies equally to all Class Members and the statute's language is incorporated into each Class Member's policy. Moreover, each potential Class Member experienced a total loss by fire to real property, and the real property policy declarations limit was stated as Actual Cash Value "up to" a specified dollar amount (meaning a numeric amount of dollars or dollars and cents expressed in numbers). The determinative legal issue is whether, under such a policy declarations limit and where the covered real property experiences a total loss by fire, the "full amount of such policy" under Section 862.053 of the Texas Insurance Code is the Actual Cash Value of the real property insured or the "up to" specified amount stated in the policy's declarations. *See* TEX. INS. CODE § 862.053 (emphasis added). This issue predominates, because the resolution of the issue would be the same and require the same proof for Plaintiff and all other Settlement Class Members. *See, e.g.*, *Funeral Consumers All., Inc. v. Serv. Corp. Intern.*, 695 F.3d 330, 348 (5th Cir. 2012).

2.    *Superiority*

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy, requiring a party seeking class certification to "demonstrate … that class resolution is superior to alternative methods for adjudication of the controversy." FED. R. CIV. P. 23(b)(3). The superiority of class certification over

other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Id.* The Court does not consider the fourth factor (manageability) here, as this is a settlement class. *See generally* NEWBERG § 13:12; Wright and Miller, 7B FEDERAL PRAC. AND PROC. § 1797.2 (3d ed.) (Dec. 2021 Update) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)). Each of the three remaining factors establish superiority and favor preliminary certification. First, class members' interests in controlling the prosecution of individual actions is slight. Second, other than Plaintiff, no potential Settlement Class Members is pending involving Defendant and this issue. Third, it would be desirable to concentrate these claims in this Court, as it will streamline the resolution of the claims and conserve judicial and litigation resources.

Accordingly, all of the requirements of Rule 23 are satisfied. The next step is for the Court to analyze whether the proposed settlement warrants preliminary approval.

## VI.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL.

### A.    The Court Should Grant Preliminary Approval Because the Proposed Settlement Satisfies the Requirements Of Rule 23 And Fifth Circuit Precedent.

Rule 23(e)(2) codifies the factors that affect whether a court should approve a class action settlement, including for a class that has not yet been certified. FED. R. CIV. P. 23(e). Before notice can issue, the putative class representative must demonstrate "that the court

will likely be able to" (i) approve the settlement under Rule 23(e)(2); and (ii) "certify the class for purposes of judgment" arising from the settlement. FED. R. CIV. P. 23(e)(1)(B). Under Rule 23(e)(2), a court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;
(B)    the proposal was negotiated at arm's length;
(C)    the relief provided for the class is adequate, taking into account:
  (i)    the costs, risks, and delay of trial and appeal;
  (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
  (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
  (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). These factors overlap with the factors that courts in the Fifth Circuit have considered on settlement approval (*Reed* factors), which include:

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of plaintiffs' success on the merits;
(5) the range of possible recovery; and
(6) the opinions of the class counsel, class representatives, and absent class members.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). As discussed below, courts in the Fifth Circuit have applied similar principles as part of the analysis of preliminary approval motions for many years. All such factors weigh in favor of preliminary approval here.

When considering these factors, "the court should keep in mind the strong presumption in favor of finding a settlement fair. 'Particularly in class action suits, there is an overriding public interest in favor of settlement.'" *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (internal citations omitted); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014) ("settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving ... lawsuits"). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

At the preliminary approval stage, the Court is not required to determine whether it will ultimately approve the settlement, but only whether "the proposed settlement will likely earn final approval." *See* Adv. Comm. Note at 27; *Kemp v. Tower Loan of Miss., LLC*, No. 15-499, 2017 WL 3426240, at *4 (S.D. Miss. Aug. 8, 2017) ("At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the range of reasonableness or possible approval." (citation omitted)). As explained:

> This preliminary fairness evaluation "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."
>
> **If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval.**

*Jones v. Singing River Health Sys.*, No. 14-447, 2016 WL 6106518, at *5 (S.D. Miss. Jan. 20, 2016) (internal citations omitted) (emphasis added); *see also In re Pool Prods. Market Antitrust Litig.*, 310 F.R.D. 300, 315 (E.D. La. 2015) ("As this motion is for preliminary

approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval." (citations omitted)). As set forth below, consideration of the Rule 23(e) factors and the Fifth Circuit factors support preliminary approval here.

**B.    The Fifth Circuit Factors: The Settlement Achieves an Excellent Result for The Class, Particularly Given the Expense, Duration and Uncertainty Of Continued Litigation.**

1.    *The Adequacy of Representation*

The adequacy requirement requires inquiry into "the zeal and competence of the representative's counsel and ... the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001).

Proposed Class Counsel (that is, Plaintiff's Counsel) have been intimately involved with the litigation, have diligently and zealously represented Plaintiff, individually and as proposed representative of the putative class, and strongly support this Settlement. Exhibit 2, Sparks Declaration ¶¶ 4-14. Class Counsel have significant experience with first-party insurance claims, having represented insureds in numerous actions throughout Texas and the United States. *Id.* Class Counsel further have significant experience with class and putative class actions throughout Texas and the United States. *Id.* Based upon their class action and insurance litigation experience, Class Counsel believe the negotiated settlement of this matter achieves an excellent result for the putative class, particularly given the many risk factors. *Id.* at ¶ 42.

Both Plaintiff and Plaintiff's Counsel have diligently and zealously represented the certified class. In the face of procedural complexities, Plaintiff's Counsel has coordinated

26

pleading and discovery efforts. Plaintiff's Counsel additionally succeeded in securing a Settlement. The "adequacy of representation" factor is thus satisfied. *See In re Chinese-Manufactured Drywall Products Liab. Litig.*, 424 F. Supp. 3d 456, 485 (E.D. La. 2020).

2.    <em>The Lack of Fraud or Conclusion</em>

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations conducted by experienced, knowledgeable counsel." *Kemp*, 2017 WL 3426240, at *4 (citations omitted). Likewise, courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary. *Owens v. Southern Hens, Inc.*, No. 07-28, 2009 WL 10722485, at *3 (S.D. Miss. July 27, 2009).

The presumption in favor of settlement is warranted here because the Settlement is the product of arms-length negotiations between sophisticated parties with the guidance of an experienced, professional mediator. Exhibit 2, Sparks Declaration ¶¶ 32-35. The process involved a global demand followed by the exchange of detailed damage calculations, arguments, responses, offers, and counter-offers. *Id.* The formal day-long mediation was followed by several days of negotiations over months before Settlement was reached. *Id.* The negotiation was conducted by highly skilled attorneys with extensive experience in complex litigation and specific knowledge of the facts and legal issues presented in this action. *See id.* Counsel on both sides have zealously advocated for their clients for years, as evidenced by the extensive motions practice and discovery undertaken in this case. *Id.* The parties entered the negotiation with the experience and knowledge necessary to

successfully negotiate on behalf of their clients, and the settlement was accordingly achieved as a result of the adversarial process. *See id.*

In addition, the presumption in favor of settlement is warranted as there is no indicia of fraud or collusion. Settlement negotiations only occurred after the parties engaged in significant informal and formal discovery. *Id.* at ¶¶ 29-31. The negotiations themselves were conducted at arm's-length and structured to follow the highest ethical standards—*e.g.,* class relief was negotiated and agreed upon before any negotiations concerning attorneys' fees, and costs occurred.[5] *Id.* at ¶¶ 32-38.

### 3.    *Adequacy of Relief*

Determining whether the proposed relief is adequate, as required under Rule 23(e), overlaps consideration of several of the *Reed* factors, namely, (1) the complexity, expense, and likely duration of the litigation, (2) the stage of the proceedings, (3) plaintiffs' probability of success on the merits, (4) the range of possible recovery, and (5) the opinions of class counsel, class representatives, and absent class members. *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 486. Here, these factors all indicate that the proposed relief is adequate.

---

[5] *See, e.g., Claudet v. Cytec Ret. Plan*, No. 17-10027, 2020 WL 3128611, at *13 (E.D. La. June 12, 2020) ("because attorney fees were negotiated separately and funded independently from the Settlement, Class Members' recoveries will not be diminished by the award of attorney fees in this case. Accordingly, this factor weighs in favor of approval"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 989 (E.D. Tex. 2000) ("In keeping with the procedure recommended in the MANUAL FOR COMPLEX LITIGATION, attorneys' fees were negotiated apart from the package of relief for the class and after negotiations over the merits concluded."); *see also* NEWBERG ON CLASS ACTIONS § 13:2 ("Fees should not be negotiated between class counsel and defendant's counsel until after a settlement of the class's claims has been agreed upon.").

a.    Complexity, Expense and Likely Duration of the Litigation

This factor requires courts to compare the immediate benefits and risks of the proposed settlement against the mere possibility of future relief given the uncertainties of protracted and expensive litigation. *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 487; *Jenkins*, 300 F.R.D. at 303. "In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Jenkins*, 300 F.R.D. at 303 (internal citation omitted).

"It is common knowledge that class action suits have a well-deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. The instant lawsuit could have continued for additional years in trial and appellate courts absent settlement. Both sides retained experienced class action attorneys. Given the foregoing, and because the settlement provides significant monetary relief for class members now, as opposed to potential relief in the future, the Court should find that this factor supports preliminary approval of the settlement. *See In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 487; *Jenkins*, 300 F.R.D. at 303.

b.    The Stage of the Proceedings

The Court's consideration of the stage of the proceedings and the nature and extent of discovery in evaluating the fairness of a settlement is focused on "whether the parties have obtained sufficient information to evaluate the merits of the competing positions." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 487 (citation omitted). "Thus, the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and

29

weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed...." *Id.* The parties engaged in significant formal and informal discovery, including discovery of each claim file implicated in the putative class and depositions of Plaintiff and Defendant's corporate representative, plus damages modeling concerning all Class Members exchanged between parties. Plaintiff's Counsel were therefore well-positioned to intelligently assess the merits of the lawsuit.

        c.      Likelihood of Success on the Merits and the Range of Possible Recovery

The "likelihood of success" factor requires the Court to compare the relief offered by the proposed Settlement with the likely recovery if the case were to proceed to trial. Absent fraud or collusion, the probability of success on the merits has been hailed as the most important *Reed* factor. *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 488 (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). When considering the possible range of recovery, given the plaintiffs' likelihood of success on the merits, the Court must remain aware that "[c]ompromise is the essence of settlement" and "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id.* at 489 (internal quotation marks and citations omitted).

Although compromising and settling on a classwide basis, were class certification contested it would have been by no means assured and sustained over any Rule 23(f) appeals or decertification motions. The next hurdle would be to establish class-wide liability and class-wide damages, including sustaining statute-of-limitations challenges for Group B Class Members, that is, those Class Members with dates of loss between June 21,

2013 (four years before Plaintiff's Original Petition bringing *individual* claims only) and September 28, 2015 (four years before Plaintiff's First Amended Petition bringing, for the first time, putative *class* claims). Despite these hurdles, Class Counsel had a high level of confidence in establishing contractual liability and damages.

Potentially available recovery for eligible Group A Settlement Class Members is 94% of the difference between what was paid on the Settlement Class Member's claim by Defendant to date and the specific dollar amount listed on the policy declarations page for coverage of real property that experienced total loss by fire, plus an additional 94% on that amount. Potentially available recovery for eligible Group B Settlement Class Members is 76% of the difference between what was paid on the Settlement Class Member's claim by Defendant to date and the specific dollar amount listed on the policy declarations page for coverage of real property that experienced total loss by fire, plus an additional 94% on that amount. These represent significant recoveries on the value of Settlement Class Members' claims given the likelihood of success on the merits. *See, e.g., Jenkins*, 300 F.R.D. at 305 (approving settlement that provided approximately 46.5% of the most probable aggregate damages that class counsel believed plaintiffs and settlement class could recover at trial, recognizing "courts regularly find settlements to be fair where '[p]laintiffs have not received the optimal relief'" given the uncertainty and risks involved in continued litigation); *Nelson v. Waring*, 602 F. Supp. 410, 413 (N.D. Miss. 1983) ("Compromise is the essence of settlement and the court should not make the proponents of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of which concessions

might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.") (quoting *Cotton*, 559 F.2d at 1330).

> d.    The Opinions of Class Counsel and Class Representatives and the Reaction of Class Members

"'The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight' when 'evaluating a proposed settlement.'" *Jenkins*, 300 F.R.D. at 305 (citation omitted); *see, e.g., Cotton*, 559 F.2d at 1330 ("[T]he trial court is entitled to rely upon the judgment of experienced counsel for the parties."); *Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 530 (N.D. Miss. 2003) (same). District courts within the circuit have thus recognized that "[c]lass counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 489 (citation omitted). "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *Hill v. Hill Bros. Constr. Co., Inc.*, No. 14-213, 2018 WL 280536, at *3 (N.D. Miss. Jan. 3, 2018) (same).

Here, at the preliminary approval stage, all parties agree that the settlement is fair, adequate, and reasonable.[69] Plaintiff's Counsel, who are experienced in insurance, class actions, and complex litigation, strongly recommend the settlement. Plaintiff likewise strongly recommends the settlement.

---

[6] The reaction of absent class members cannot be determined prior to the dissemination of notice.

### C.    Under Fifth Circuit Authority, It Is Appropriate For The Proposed Class Settlement To Include Claims Not Alleged In The Original Complaint.

In settlement negotiations, Defendant understandably requested that the resolution of this case include the participation and release of affiliated entities and persons.[7] Black letter law supports and allows the inclusion of such affiliated non-parties to a putative class settlement:

> In determining the validity of a settlement agreement's release of *non-parties*, courts have generally employed the same analysis they apply to the release of *claims*: agreements releasing non-parties will be approved so long as "the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted against the parties to the action being settled."
>
> ...
>
> In sum, the courts' approach to the release of parties mirrors their approach to the release of claims: as explained in the succeeding section of the Treatise, courts will approve releases of claims that were not in the case's complaint, including claims over which the court lacks jurisdiction, so long as they arise out of the same factual predicate as the class's main claims. So too, as this section discussed, will courts approve the release of non-parties, even those beyond their jurisdiction, so long as there exists some factual relationship between the release and the class's claims.

NEWBERG § 18:20 (emphasis in original; internal citations omitted). Allowing non-parties to participate in a class settlement has the obvious impact of promoting resolution of lawsuits while precluding serial litigation against corporate affiliates. *Id*. ("A defendant may be unlikely to settle a class action if class members can later pursue unasserted claims, or claims against non-parties, that may have the effect of re-opening the

---

[7] Under the Settlement, "Released Persons" "means, individually and collectively, (i) Defendant, and all of its past and present divisions, parent entities, associated entities, affiliates, partners, and subsidiaries; and (ii) all past and present officers, directors, shareholders, agents, attorneys, employees, stockholders, successors, assigns, independent contractors, and legal representatives of the entities set forth in (i)." Settlement ¶ 2.28.

33

litigation."). For example, in *Jones v. Singing River Health Servs. Foundation*, an ERISA class action, the Fifth Circuit held that the district court did not abuse its discretion by approving the release of non-party, Jackson County, as part of the parties' proposed class action settlement. 865 F.3d 285, 302-03 (5th Cir. 2017).

A similar conclusion is reached regarding released related claims.[8] The Second Circuit reached a similar conclusion in *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, recognizing that class actions may release claims, even if not pled, when such claims arise out of the same factual predicate as the settled class claims. 396 F.3d 96, 108 (2d Cir. 2005) (relying upon *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) to hold release of merchants' claims against credit card companies and their member banks was valid even though member banks were non-parties). Here, Defendant is providing for the class relief in exchange for a release from liability for conduct premised on the identical factual predicate of claims alleged in this action, that is, involving real property total loss by fire within the class period. This fact supports preliminary approval of the proposed settlement.

**D.    Plaintiff's Forthcoming Motion Requesting Attorneys' Fees and Costs Falls Within the Range of Reasonableness Sufficient to Allow Preliminary Approval and Notice to the Class.**

---

[8] Under the Settlement, "Released Claims" "means and includes any and all past, present and future claims arising from or in any way related to **real property total loss by fire of any kind on claims within the class period** (including, but not limited to, calculation, deduction, determination, inclusion, modification, omission, and/or withholding of settlement amounts due and owing under a policy or otherwise), whether known or unknown, including but not limited to Unknown Claims pursuant to Section 9.2 of the Agreement, and that were asserted or could have been asserted in the Action to the full extent of res judicata protection." Settlement ¶ 2.27 (emphasis added). "Unknown Claims" include "known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent, claims with respect to all Released Claims," which are settled and released. Settlement ¶ 9.2.

Plaintiff's Counsel will seek as attorneys' fees, costs and litigation expenses, and Defendant has agreed to pay if Court approved, an amount of and no greater than $350,000. Class Members' recoveries will not be reduced or enhanced by the amount of attorneys' fees, costs or litigation expenses paid.

Under the Settlement Agreement, and pursuant to Rule 23(e) and (h), Class Members will receive notice that fees, costs and litigation expenses will be sought, and will be provided information about how they can object, assuming the Court preliminarily approves the Settlement. Plaintiff's Counsel will then file a motion for fees and expenses pursuant to both the Settlement and Rules 23(h)(1) and 54(d)(2). In turn, this Court will then award the attorneys' fees and costs that it determines appropriate assuming the Settlement is finally approved.

Given Plaintiff's Counsel's considerable efforts and success in achieving this recovery for class members, there is no reason to doubt the reasonableness of an anticipated request for attorneys' fees and expenses, or the fairness of the Settlement. *See Jones*, 2016 WL 6106518, at *6 (holding "the attorneys' fees and expenses appear, at this preliminary stage, to be reasonable due to the number of attorneys involved in the case and the complexity of the case. As a result, the Court finds that the proposed settlement should be preliminarily approved ...."). Although fees are analyzed at the final approval stage, proposed Class Counsel seek amounts made available on a "claims made available" basis. In this District, and elsewhere in the Fifth Circuit, "[a] percentage fee approach, as opposed to a lodestar computation, is the preferred method for determining awards of attorneys' fees in common fund, or class action, cases." *Batchelder*, 246 F. Supp. 2d at 531; *Hill*,

2018 WL 280537, at *2; *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 499-501 (N.D. Miss. 1996) (collecting cases within Fifth Circuit employing percentage method and detailing "numerous" problems with the lodestar approach noted by other courts). "The Fifth Circuit has [] noted 'that the percentage method is more predictable, encourages settlement, and reduces incentives to protract litigation[.]'" *Cook v. Howard Indus., Inc.*, No. 11CV41, 2013 WL 943664, at *3 (S.D. Miss. Mar. 11, 2013) (quoting *Union Asset Mgmt.*, 669 F.3d at 644).

"This court has substantial discretion in determining the appropriate fee percentage." *Hill*, 2018 WL 280537, at *2.[9] Plaintiff's Counsel will demonstrate when submitting their anticipated motion concerning fees and litigation expenses (assuming district court preliminary approval) that the request will be within a reasonable ratio.

Further, the agreed sum of $350,000.000 encompasses all attorney's fees and all costs incurred by Plaintiff's counsel associated with this litigation, and will not reduce any class member's recovery. Thus, the attorneys' fees and costs are to be paid "*over and above* the settlement costs and benefits with no reduction of class benefits," and such agreements between plaintiffs' and defense counsel as to the amount to fees "are *encouraged*, particularly where the attorneys' fees are negotiated separately and only after all the terms have been agreed to between the parties." *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, *28-30 (M.D. Tenn. Aug. 11, 1999) (emphasis added); *Bethea*

---

[9] "Under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available to class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorneys' fees and expenses, and the expenses of administration." *Bethea v. Sprint Comm. Co. L.P.*, No. 12-322, 2013 WL 228094, at *3 (S.D. Miss. Jan. 18, 2013).

*v. Sprint Comm. Co. L.P.*, No. 12-322, 2013 WL 228094, at *2 (S.D. Miss. Jan. 18, 2013) ("Courts, including the Fifth Circuit, have encouraged litigants to resolve fee issues by agreement, if possible."); *Bailey v. AK Steel Corp.*, No. 1:06-468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008) ("courts are especially amenable to awarding negotiated attorneys' fees and expenses in a reasonable amount where that amount is in *addition to and separate from* the defendant's settlement with the class" (emphasis added)). Indeed, courts within this Circuit have held that these "over and above" fee requests are entitled to a "presumption of reasonableness." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-33 (W.D. Tex. 2007); *see also Cole v. Collier*, No. 14-1698, 2018 WL 2766028, at *13 (S.D. Tex. June 8, 2018) ("When the amount of fees is agreed upon, is separate and apart from the class settlement, and has been negotiated after the other terms have been agreed, the attorneys' fee is presumed to be reasonable.").

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court preliminarily approve the agreed Settlement. This relief is unopposed. In order to comply with notice requirements under CAFA, as well as to allow sufficient time after notice for class members to decide whether to opt out of the classes or to object to the settlement, Plaintiff further requests that the Court schedule a final approval (fairness) hearing no sooner than 120 days from the date of preliminary approval.

Respectfully Submitted,

*/s/ Mark C. Sparks*
Mark C. Sparks
State Bar No. 2400273
mark@thefergusonlawfirm.com
Jane S. Leger
State Bar No. 007788814
jleger@thefergusonlawfirm.com
Tripp Jones
State Bar No. 24097058
tjones@thefergusonlawfirm.com
THE FERGUSON LAW FIRM, LLP.
3155 Executive Blvd.
Beaumont, Texas 77705
Telephone: (409) 832-9700
Facsimile: (409) 832-9708

- And -

Mike Love
State Bar No. 24004778
mikelove@texaslawoffice.com
MIKE LOVE & ASSOCIATES, L.L.C.
202 E. Lufkin Ave.
Telephone: (936) 632-2000
Facsimile: (936) 632-2005

**ATTORNEYS FOR PLAINTIFF
DAPHNE NOBLE FREE AND
PUTATIVE CLASS COUNSEL FOR
CLASS MEMBERS**

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Plaintiff and counsel for Defendant personally conducted a conference regarding the merits of this motion prior to January 26, 2023. Counsel for Defendant has indicated he is UNOPPOSED to the relief Plaintiff seeks in the Motion.

<u>*/s/ Mark C. Sparks*</u>
Mark C. Sparks

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on January 26, 2023, a copy of this document was served to all Counsel of Record via electronic notice to:

Roger D. Higgins
rhiggins@thompsoncoe.com
Elizabeth Lee Thompson
lthompson@thompsoncoe.com
Gino J. Rossini
grossini@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 North Pearl Street
Twenty-Fifth Floor – Plaza of the Americas
Dallas, Texas 75201
(214) 871-8200
*Counsel for Defendant*

John M. Causey
HOPE & CAUSEY, P.C.
P.O. Box 3188
Conroe, Texas 77305-3188
(936) 441-4673
hcdocket@hope-causey.com
*Counsel for Defendant*

*/s/ Mark C. Sparks*
Mark C. Sparks